TOWN v. DUPLEX-POWER CAR CO.

1. SEQUESTRATION—EQUITY—CORPORATIONS—RECEIVERS.
   Courts of equity will not ordinarily, by virtue of their general equitable jurisdiction, or by virtue of their visitatorial powers over corporate bodies, sequestrate the effects of the corporation or take the management of its affairs from its officers and commit it to a receiver, whether upon the application of creditors or of shareholders; nor have they general jurisdiction to dissolve and wind up corporations.[1]

2. CORPORATIONS—STOCK AND STOCKHOLDERS—STATUTES.
   Section 9757, 3 Comp. Laws, 5 How. Stat. (2d Ed.) § 13530, gives the courts authority to entertain bills and petitions of shareholders of a corporation, to compel its officers to account for official conduct in the management and disposition of corporate funds, to remove or suspend them, order new elections, to restrain the alienation of its property or sequestrate it, and appoint a receiver at the suit of a judgment creditor, in certain cases, or to dissolve the corporation.

3. SAME—INJUNCTION—RECEIVER.
   Complainants averred that they and certain defendants were stockholders of defendant corporation which was organized for the purpose of manufacturing motor cars, trucks, etc.; that defendants, who constituted a majority of the stockholders, conspired together to acquire the property and busi-

[1] As to inherent jurisdiction of equity, independently of statute, at the instance of stockholder, to appoint a receiver or wind up a corporation because of mismanagement or fraud of its officers, see note in 39 L. R. A. (N. S.) 1032.

ness of the company to themselves, and with that intent bought sufficient stock to obtain control of the corporation, electing themselves and others to the office of directors; that although money in addition to that obtained from the issue of stock was not needed, defendants borrowed funds, executing a chattel mortgage on all its assets to one of the defendants; that the mortgage was payable 30 days after its execution, in Chicago, and conferred the right of taking possession and selling without notice at private sale; that the books had not been kept so as to show the actual status of the corporation or its financial condition; that defendants, in pursuance of their fraudulent scheme, refrained from finishing up or marketing cars in its shop that were practically complete, and that unless the court should restrain defendants they purposed to dispose of all the assets of the corporation under the mortgage. *Held*, that an injunction restraining the defendants from disposing of any of the corporate property was too broad, that while the showing made by the bill and accompanying evidence and affidavits justified the appointment of a receiver, defendants should only have been restrained from foreclosing the mortgage, upon condition that they indemnify the creditors by securing the payment of the indebtedness.

Appeal from Eaton; Smith, J. Submitted June 10, 1912. (Docket No. 63.) Decided November 8, 1912.

Bill by Frank P. Town and others against the Duplex-Power Car Company, for injunctive and other relief. From orders appointing a receiver and enjoining the sale of assets, defendants appeal. Modified and affirmed.

*Elmer N. Peters, Lyman H. McCall*, and *James M. Powers*, for complainants.

*Garry C. Fox* (*Butterfield & Keeney*, of counsel), for defendants.

OSTRANDER, J. The bill is filed by a minority of the stockholders of the Duplex-Power Car Company, and it prays for the discovery and collection of the assets of the company, through a receiver, for a dissolution of the corporation and the distribution of its assets. There is

also the prayer that the receiver carry on the business if the court deems it necessary to do so to protect stockholders and save assets. The defendant corporation and its directors and others of the defendants, including the trustee named in a mortgage of corporate property, are restrained by an order of the court, made upon the filing of the bill, from selling, mortgaging, or otherwise incumbering any property of the corporation, and the said trustee is restrained from foreclosing the said mortgage. The bill was answered on oath; the material allegations thereof being denied. Later, before a hearing upon the merits, a modification of the injunction was refused, a receiver of the assets of the corporation was appointed, and, in addition to the usual powers of a receiver, he was authorized to—

"Complete the cars now in course of construction, and to employ such help as may be necessary therefor to sell not to exceed five of said cars, until the further order of the court, and at the best price that can be obtained. The cost of such completion to be a charge against the assets coming into his hands, and the receipt therefrom to be an asset belonging to said company. It is further ordered that said receiver may borrow money to an amount not to exceed one thousand dollars for the purpose of completing said cars and to pledge the assets of said company to pay the same, until the further order of the court."

Defendants claim the benefit of an appeal "from the final order and decree, and other orders and decrees rendered in said cause on, to wit, April 23d, A. D. 1912, and on other prior dates, and filed and entered in said court and cause by the register thereof." It is the contention of appellants that the court exceeded its powers both in granting and keeping in force the injunction and in appointing a receiver.

The Duplex-Power Car Company was organized September 22, 1909, under Michigan laws by three of the defendants. In the articles of association its business is stated to be the manufacture and sale of commercial and pleasure motor cars, motor trucks, motor wagons, motor

vehicles, and parts entering into the manufacture of the same. Its designated principal place of business is Charlotte, Mich., its capital $100,000, and it is recited that $64,-000 of this was subscribed and $55,700 paid in—$28,000 in real estate in Charlotte and $22,000 in machinery, tools, patterns, etc. It is charged in the bill that, when the articles were executed, the corporation did not own the said mentioned property, and has not since acquired it; that the property was not worth $50,000, nor more than $15,000, that none of the persons executing the said articles owned said property or have since acquired it; and that the corporation has never had any interest therein, except to occupy and use it. It is charged, upon information and belief, that the said incorporators fraudulently represented that the corporation owned the said property to induce complainants and others to purchase the stock of said company. It is further charged that the cars and trucks which it was proposed the said company manufacture were to be what is known as a "four-wheel drive," according to which the power is applied to each of the four wheels of the car, and that in the organization of the corporation, one-half, or 5,000 shares, of the capital stock, was to be paid to the owners of the patent covering such four-wheel drive, in consideration of the transfer of the patent right to the corporation, and the remaining 5,000 shares was to be known as treasury stock and sold at par for the purpose of creating a working capital; that between the organization of the company and the 1st day of June, 1910, complainants and others had subscribed and paid for $15,000 of the treasury stock, which sum of money had been used to develop and perfect cars and purchase material for their manufacture, so that on June 1, 1910, the corporation was ready to manufacture and sell its cars, and had sufficient material on hand to manufacture 17 or 18 cars.

Needing more capital, the remaining treasury stock was offered for sale and certain of the defendants agreed to purchase the balance of $32,000 at par. The arrange-

ments for this sale of capital stock were made by one Todd Lunsford, who caused an investigation to be made of the practicability of the four-wheel drive, covered by the patent owned by the company. But it is said that this purchase of stock by defendants was not with an honest intent and purpose, but for the purpose of acquiring eventually the property and the said patent to themselves to the exclusion of complainants and other stockholders; that said Todd Lunsford, on behalf of himself and his associates, refused to carry out the arrangement and to purchase the said capital stock unless complete control and management of the business was turned over to them; and that in consequence $10,000 of the patent stock was transferred to him, and the remaining $40,000 or thereabouts of the patent stock was transferred to a trustee or trustees with power to vote the same, after which Lunsford and his associates did pay $32,000 in cash, and received certificates of stock therefor. This arrangement was completed on or about June 9, 1910, Lunsford was placed in management and control of the affairs of the corporation, elected treasurer, and made manager, and has since had the control and management of the corporation affairs. It is charged that he and his associates entered into a conspiracy to secure the property, including the letters patent, to deprive the remaining stockholders of their interest in the property, and to "freeze out" other stockholders; that he and his associates purposely dissipated and wasted the assets, and did not complete and place upon the market cars for which material had been purchased, leaving cars unfinished, so that they could not be sold, which cars, if finished, could have been sold for approximately $70,000. Various other acts of omission and commission are charged to have been done in furtherance of the alleged conspiracy, including the borrowing of $9,700 from two of the defendants, some of one and some of the other, and giving notes therefor, when the money borrowed was not needed to pay running expenses; that on the 6th day of July, 1911, the company executed a

chattel mortgage on all of its property to defendant Farlin H. Ball, of Oak Park, Cook county, Ill., as trustee, to secure payment of the money evidenced by said notes, the mortgage being made due and payable 30 days from date, in Chicago, with the right to take possession of the mortgaged property and to sell the same at private sale, without notice. It is charged that the money was not lent to the corporation nor was the mortgage given in good faith, but for the express purpose of embarrassing the corporation and acquiring its assets. It is charged that the books of account of the corporation have been inaccurately and imperfectly kept, so that an examination of them will not disclose what the actual expenses have been nor the true situation of its financial condition, and that this method of keeping the books was in accordance with the purpose of said conspirators. It is charged that the company, at the time of filing the bill, had cars manufactured and in process of manufacture of the value at the regular retail price of $60,000 and upwards, and practically complete and ready for market.

Complainants offer to indemnify the noteholders and the trustee in the mortgage against damage or loss on account of the nonpayment of the said notes if the court shall determine that the money represented thereby is actually due and owing. It is further charged that the complainants have good reason to believe, and do believe, that the trustee is about to dispose of all the assets of the corporation under the power of sale contained in the mortgage, and are justly apprehensive that he will do this unless restrained by injunction; that they have good reason to believe, and do believe, that the board of directors will sell and dispose of the personal property of the corporation, unless restrained by injunction, to the irreparable injury of complainants. Amendments later made to the bill, pursuant to an order of March 18, 1912, charge that Todd Lunsford, before he and his associates acquired stock in the corporation, obtained a written agreement securing the right to name four out of the seven directors

of the corporation; that at the annual meeting of the stockholders held August 6, 1910, he did, in fact, name all the directors, who were Calvin H. Hill, Charles B. Lamb, Fitch Beach, Todd Lunsford, William L. Cummings, Walter C. Powell, and Francis A. Messler; that for the purpose of making William L. Cummings a director Messler assigned to him 200 shares of the capital stock, and Cummings accepted the same, and became a member of the board of directors for the express purpose of enabling Todd Lunsford and his associates to carry out their fraudulent scheme and wreck the company; that Fitch Beach and Charles B. Lamb, if they were not parties to the scheme and plan to wreck the company, were deceived and misled by Todd Lunsford and induced to act in harmony with him and his associates in carrying out such scheme; that because of the connivance and active assistance of the board of directors, and the fact that five of the seven directors are parties to said scheme, it is impossible for complainants to protect their rights by appealing to the board of directors, and because the mortgage held by Farlin H. Ball was due on the 6th of August, 1911, it is impossible to bring the grievances of which they complain before a meeting of the stockholders, and because Todd Lunsford and his associates control a majority of the stock it is futile to expect them to correct the grievances of which complainants complain at a meeting of stockholders.

It has been stated that the material allegations of the bill, and it should be added of the amended bill, are denied by defendants under oath. It should be noted, also, that nineteen or more persons made defendants answer, admitting each and every allegation of the bill to be true according to their information and belief. In the answers of other defendants to the amended bill, it is set up that at the meeting at which the directors who have been named were elected the complainants were present, or were represented, voted for them for directors of the company, and that every vote cast at the meeting was

cast for them, and in the answer to the original bill it is alleged that at the annual meeting of the company held at its office in Charlotte on August 5, 1911, there were present a considerable number of stockholders; that a financial statement of the affairs of the corporation was made by the treasurer, and, in view of the fact that the bill of complaint in this cause had then been lately filed and an injunction issued restraining the officers and directors from selling any of the property of the company, it was not thought best by the majority of the stockholders present to elect a new directorate, but to allow the old directors and officers to hold over, and the meeting was adjourned to September 19th at 2 o'clock in the afternoon. On said last-mentioned date and hour there were present certain of the complainants constituting a minority of the stockholders, and holding not more than $10,000 par value of the capital stock; that, because of a misunderstanding respecting the date to which the meeting had been adjourned, the majority of the stockholders did not attend; that the minority attending, finding that the majority had failed to attend, proceeded to elect as directors certain of the complainants, who organized as a board of directors and elected officers; that on the morning of September 20, 1911, these directors and officers so elected took possession of the office and plant of the defendant company, assumed to discharge the superintendent and custodian of the building, and to put a new custodian of their own selection in possession of the plant, took locks off the doors, and put on new locks, and have forcibly excluded the old and alleged rightful officers of the corporation, carried away and suppressed the corporate records and books of account and papers.

To complete the pertinent history of the proceedings, it should be stated that the injunction was issued August 4, 1911, when an order was made to show cause on September 5, 1911, why a receiver should not be appointed. Defendant Farlin H. Ball, the trustee named in the mortgage, and a nonresident of the State, conceiving that as to him-

self a separable controversy existed, removed the cause to the Federal court for the western district of Michigan, and by order of that court, made January 18, 1912, the cause was remanded to the State court. At this time other nonresident and principal defendants had not been brought before the court, and they answered the bill in February, 1912. Later two motions were brought on for hearing. One of them was the motion of defendants for such a modification of the preliminary injunction as would permit the trustee to foreclose the mortgage; the other the motion of complainants for leave to amend the bill and for the appointment of a receiver. The court on March 14, 1912, announced that the motion to amend the bill was granted, to modify the injunction and to appoint a receiver refused, and concluded:

"I can see no good reason why this case should not be heard at the coming April term, and the interests of the parties to the cause will be best subserved if a speedy hearing is had."

Accordingly, an order was entered March 18, 1912, pursuant to the said announcement, except that no reference is made therein to the motion for a receiver and the motion for a receiver is not therein denied. It was not until after April 8, 1912, that all answers to the amended bill of complaint were filed, or were required to be filed by the order of the court. The April, 1912, term of court began April 8th. A motion was made by defendants to strike the cause from the calendar. On April 16, 1912, the court made and filed the following opinion and decision:

"I am of the opinion that this motion must be granted. In the memo opinion filed March 16, 1912, in this cause, denying a motion for the appointment of a receiver, the court said that there seemed to be no good reason why this case should not be heard at the April term, and that the interest of the parties would be best subserved by a speedy trial. I think that the case should be heard speedily, and I can see no good reason why it may not be. I do not think, however, that the defendants can be compelled to go to a hearing, and, having moved that the cause

be stricken, the motion is granted. The motion of the complainants filed March 1st last for the appointment of a receiver was denied, believing that the case would surely be heard this term. No order has as yet been signed denying the motion. The situation is such that the court feels it a duty to appoint a receiver if the case is to be continued. The complainants may have an order for the appointment of Frank P. Town as receiver of the Duplex-Power Car Company, with such restrictions as will conserve the property and such bond as may hereafter be fixed by the court on application for the same."

The order appointing the receiver followed.

The sufficiency of the bill is challenged by appellants; but not by demurrer and not with respect to the power of the court upon final hearing to wind up the affairs of the company, and for that purpose to appoint a receiver. Therefore we may say, as we did in *Woodmansee* v. *Brick Co.*, 164 Mich. 688, 691 (130 N. W. 311):

"Whether the bill states a case for equitable cognizance is a question not presented on this appeal."

It is proper, however, to give some attention to the scope and purpose of the bill and to some general rules governing the jurisdiction exercised in such cases.

The general jurisdiction of equity over corporate bodies does not extend to the dissolving of the corporation, winding up its affairs and sequestrating corporate property. Courts of equity will not ordinarily, by virtue of their general equitable jurisdiction, or by virtue of their visitatorial powers over corporate bodies, sequestrate the effects of the corporation, or take the management of its affairs from its officers and commit it to a receiver, whether upon the application of creditors or of shareholders. High on Receivers, § 288 *et seq.; Fuller* v. *McCormick*, 156 Mich. 518 (121 N. W. 280). It was said in *Miner* v. *Ice Co.*, 93 Mich. 97, 112 (53 N. W. 218, 223 [17 L. R. A. 412]):

"The general rule undoubtedly is that courts of equity have no power to wind up a corporation, in the absence of statutory authority. This rule is, however, subject to qualifications."

Following a statement of the facts of the particular case and references to authorities, the opinion (93 Mich. 117, 53 N. W. 224, 17 L. R. A. 412) continues as follows:

" I think a court of equity, under the circumstances of this case, in the exercise of its general equity jurisdiction, has the power to grant to this complainant ample relief, even to the dissolution of the trust relations."

*Miner* v. *Ice Co.* came into the court after a hearing on the merits in the court below. In *Torrey* v. *Cement Co.*, 150 Mich. 86 (113 N. W. 580), heard on demurrer to the bill, the court followed, upon the question of jurisdiction, *Miner* v. *Ice Co.* See, also, *Avery* v. *Manufacturing Co.*, 27 N. J. Eq. 412. These cases are exceptional and decision seems to proceed upon the theory that, in the exercise of jurisdiction to relieve from fraud and the effects of breaches of trust, relief may be granted to a suitor, although it involves sequestrating the property and winding up the affairs of a corporation; the result to the corporation being an incident merely of adequate and complete relief. In the New Jersey case referred to, a receiver was appointed merely to hold and preserve assets of a corporation, admittedly insolvent, with no available assets, against which numerous suits were pending.

The courts have power, derived from the statute, to entertain the bills and petitions of shareholders of a corporation, to compel officers of the corporation to account for official conduct in the management and disposition of corporate funds, to suspend and to remove them, to order new elections of directors, to set aside, and to restrain alienations of corporate assets. The courts have power, also derived from the statute, to sequestrate the property of a corporation and appoint a receiver thereof at the suit of a judgment creditor in certain cases, and in certain other cases to adjudge dissolution of the corporation. See 3 Comp. Laws, § 9757 *et seq.* (5 How. Stat. [2d Ed.] § 13530). It is plain that no statutory authority of the

court is invoked by the bill of complaint, and that complainants seek the exercise of powers belonging to the general equity jurisdiction of the court.

It is equally plain that the case made by the original bill did not warrant the injunction which was granted. The stockholder of the Duplex-Power Car Company had joined in an adventure the success of which depended upon the application of certain alleged novel and patented ideas to motor cars, upon the demonstration of the practicability and popularity of the vehicle which it was proposed to manufacture. It was a going concern at that time, in the hands of duly elected officers. No device better calculated to destroy the corporation and all of its assets can be conceived than one which would interrupt its business, prevent the necessary demonstration of its vehicle, and wholly prevent the carrying on of the corporate business. This was the necessary effect of the injunction. It would have been proper enough to restrain a threatened foreclosure of the mortgage temporarily upon condition that the complainants furnished indemnity to those creditors of the company who were secured thereby. The injunction which was granted forbade the sale of vehicles and their removal from the company's place of business.

Nothing is claimed for those charges in the bill which relate to the original organization of the company and the alleged false representations contained in the articles of association. The bill proceeds upon the theory that the patent was acquired, is the property of the company, and that cars were being manufactured for sale. The insolvency of the company is not made to appear. On the contrary, the facts stated indicated solvency if the patent had any real value. The charges concerning mismanagement, lack of necessity for borrowing such money as was borrowed, and failure to realize money from the sale of cars are most general, lacking entirely in detail and in certainty. No specifications were furnished by way of affidavits filed with the bill. It must be inferred that because complainants charged upon information and belief

a threatened sale of the assets to satisfy a mortgage given for the purpose of permitting such a sale to be made, the court below granted the injunction preventing not alone such a sale, but also practically closing the doors of the institution; this upon an *ex parte* showing. The showing for a receiver was more complete. In addition to the allegations of the bill, the court had before it, as affecting its judgment, the fact that the cause had been removed to the Federal court, which fact supported the inference that an apparently indifferent trustee in a mortgage was seeking in this way to escape the injunction of the State court, or that the creditors named in the mortgage, who were also charged with conspiracy to wreck the company, were using the trustee for their own purposes. The court also knew, when the order for a receiver was made, that two boards of directors were each claiming to be lawful officers of defendant company. There was produced at the hearing certain correspondence which had fallen into the hands of complainants after the filing of the bill, which tended rather strongly to prove that the appealing defendants were conspiring together either to force the complainants to sell their stock in the concern at a price favorable to the purchasers or to effectually exclude them from beneficial interest in the company. No one can read the correspondence which was produced without being impressed with the idea that Todd Lunsford and certain other of the defendants were privately considering, and were affected by, the purpose to prefer themselves at the expense of complainants, and were not seeking the common good of the company and of all of its shareholders. Counsel for both parties recognize the general rule stated and applied in *Woodmansee* v. *Brick Co.*, 164 Mich. 688 (130 N. W. 311), and in numerous cases which are cited in the opinion. Upon the authority of those and of other decisions, it is contended that the power to appoint a receiver for a corporation *pendente lite* is never exercised upon preliminary inquiry and upon a bill the essential facts of which are denied by sworn answers.

Attention has been directed to the fact that the court below had before it more than a sworn bill and sworn answers. Upon the application for a receiver, the court was bound to consider whether, in view of all facts presented, there was reasonable prospect that the defendant company would be able to carry on its business and save its property; whether, however lawful the debt secured by mortgage of its assets may be, the security was given and its foreclosure was contemplated with the purpose on the part of defendants to secure the property of the company for themselves; whether it was likely that with rival boards of directors contending for control of the company either could command business success; and, finally, whether the charges that defendants were conspiring to exclude and injure the complainants were not so well established by the correspondence produced and by other circumstances, that a receiver with the duty of preserving the property of the corporation ought to be appointed.

We express no opinion upon the merits, or apparent merits, of the controversy. We are of opinion that the injunction granted was too broad, and should have been limited to restraining the trustees and all others interested from a foreclosure of the mortgage, upon condition, however, that complainants secure eventual payment of the debts secured by the mortgage, if found to be valid debts of the corporation. Likewise the order appointing the receiver should have confined him to preservation merely of the assets of the corporation. Whether a case can be made which will warrant the court in winding up the affairs of the company in order to grant complainants proper relief must be determined at the hearing.

Appellants may have the order indicated herein, and will recover one-half the taxable costs of this appeal.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and BIRD, JJ., concurred.