ALLIED MAGNET WIRE CORPORATION *v.* TUTTLE.*

[No. 24,979.   Filed December 21, 1926.   Rehearing denied April 19, 1927.]

1. CORPORATIONS.—*Common and preferred stockholders are on equality as to maturity of their stock except as otherwise provided.*—Where no provision of the statute or the articles of incorporation fixed the maturity of preferred stock, all the shareholders, whether preferred or common, were on an equal basis as to stock maturities, except as provided in the stock certificates.   p. 171.

2. CORPORATIONS.—*Court of equity has no jurisdiction to dissolve corporation at suit of stockholder except where objects of corporation have become impossible.*—In the absence of statutory authority, a court of equity does not have jurisdiction to dissolve a corporation at the instance of a stockholder, or to appoint a receiver to wind up its affairs, except where it clearly appears that it has become impossible to accomplish the objects of the corporation, or that its affairs have been so managed that failure or ruin is inevitable.   p. 171.

3. CORPORATIONS.—*Courts have inherent power to appoint receiver for corporation, but it should be exercised cautiously.*—Courts have inherent power to appoint a receiver for a corporation, but such power should be exercised cautiously, especially when the appointment is sought on other than statutory grounds.   p. 171.

4. CORPORATIONS.—*Preferred stockholder's right to have receiver for corporation.*—The right of a preferred stockholder to have a receiver appointed for the corporation and its consequent dissolution must be measured by the rights of a shareholder of a going concern.   p. 172.

5. CORPORATIONS.—*Preferred-stock contract may be unenforcible as contrary to public policy.*—A preferred-stock contract, like any other contract which injuriously affects the public or is in opposition to well-established rules of law, may be unenforcible as contrary to public policy.   p. 173.

6. CORPORATIONS.—*Statute giving preferred stockholders right to require liquidation of corporation held to refer to lawful conditions and stipulations in stock certificate.*—The provision in §15a of the statute for the organization of corporations for profit (Acts 1921 p. 93, as amended

*Reported, 50 A. L. R. 252

by Acts 1923 p. 531, §4837 Burns 1926), giving preferred stock-holders the right to require the liquidation of the corporation for failure to comply with the conditions and stipulations set forth in the certificate of stock, refers only to such conditions and stipulations as the corporation could lawfully make.   p. 173.

7.  CORPORATIONS.—*"Cumulative" dividends on preferred stock defined.*— Provision in preferred-stock certificate that dividends were to be "cumulative" *held* to mean that if net earnings, at any dividend-paying period, were insufficient to pay a stipulated dividend, it was to be made up out of subsequent earnings.   p. 175.

8.  APPEAL.—Appellate tribunal, in construing a contract, must assume that the parties thereto intended to contract with reference to existing law on the subject of the contract.   p. 175.

9.  CONTRACTS.—*Rule for construction of contracts stated.*—Courts, in construing contracts, will consider the circumstances surrounding the parties, the subject-matter of the contract, the objects intended to be accomplished, and give effect to the intention of the parties thereto when not in violation of a statute or contrary to some established rule of law.   p. 175.

10.  CORPORATIONS.—*Preferred stockholder in corporation for profit cannot have receiver appointed to dissolve corporation for nonpayment of dividend when there were no profits.*—Under the provisions of the act of 1921 for the organization of corporations for profit (Acts 1921 p. 93, §23; §4846 Burns 1926), dividends on preferred as well as common stock can only be paid from the profits of the corporation, and a preferred stockholder cannot have a receiver appointed to wind up the corporation for failure to pay a dividend on his stock at a time when the corporation had no profits out of which to pay dividends   p. 176..

From Marion Superior Court (A 29,980); *Linn D. Hay,* Judge.

Application by Charles E. Tuttle for appointment of a receiver for the Allied Magnet Wire Corporation. From an order appointing a receiver, the corporation appeals. *Reversed.*

*Martin M. Hugg, Samuel D. Miller, Frank C. Dailey, William H. Thompson, Albert L. Rabb, Thomas D. Stevenson* and *Perry E. O'Neal,* for appellant.

*Will H. Hays, Hinkle C. Hays, Alonzo C. Owens, W. Paul Stratton, John S. Taylor, William H. Bridwell, James W. Fesler, Harvey J. Elam, Howard S. Young* and *Irving M. Fauvre,* for appellee.

MYERS, J.—This is an appeal from an order of the court below appointing a receiver for appellant on complaint of appellee, a preferred stockholder. This suit was the outcome of appellant's failure to pay a dividend on its preferred stock for more than ninety days after the date appellee claims he was entitled to receive it. A demurrer to the complaint for want of facts was overruled, and this ruling is assigned as error.

Appellee rests his cause of complaint upon alleged contractual rights given him in his stock certificate and appellant's articles of incorporation. From briefs of counsel and from oral argument heard, this court is of the opinion that the real question at issue is answered by determining the legal effect of the stock certificate and articles of association fixing the rights of the parties.

It is shown by the complaint that appellant was incorporated on February 15, 1924, by appellee and two other persons as incorporators, under an act of the General Assembly of this state approved February 28, 1921, and the amendment thereto approved March 8, 1923. Acts 1921 p. 93; Acts 1923 p. 529. The capital stock authorized was 1,000 shares of no par value common stock and 200 shares of eight per cent cumulative preferred stock of the par value of $100 per share, the latter to be sold at par. The articles recite that the preferred stock shall be entitled to dividends at the rate of eight per cent. per annum and shall not participate further in the profits of the company. The dividends shall be cumulative from the date of the issuance of the stock "and shall be payable semi-annually as the net earnings of the company are available to meet the same." Then follows a provision giving the preferred stock priority of payment over common stock should the company liquidate, as also the right of the corporation to redeem its preferred stock prior to maturity. "Failure to pay any dividend on maturity of the preferred

stock for a period of ninety (90) days after the same shall have become due, or any default on the part of the company in respect to the holders of the preferred stock continuing after thirty (30) days notice of such default shall cause all of said preferred stock to become due and payable at the option of the holders thereof. In the event the company thereafter fails or refuses to redeem said preferred stock on demand, the holders thereof shall have the right to require the dissolution of the company and the application of its assets to the discharge of its liabilities and to the redemption of said preferred stock."

The certificate, in so far as the same is at present material, provides that: "The holder of this certificate shall be entitled to receive dividends at the rate of eight per cent. (8%) per annum on the face value hereof, payable semi-annually on the first days of January and July of each year, beginning July 1, 1924; such dividends to be cumulative and payable out of the net earnings of the company so long as said preferred stock is outstanding." In case of liquidation of the company, priority in the payment of preferred stock at par and accumulated dividends is given, and the right of the corporation to call the stock under certain conditions is reserved by the corporation. "Failure to pay any dividend for ninety (90) days after the same becomes due shall cause all of the preferred stock to mature and be redeemable at the option of the holders thereof. If the company shall thereafter fail to redeem this certificate on demand, the holder shall have the right to require the dissolution of the company and the application of its assets to its liabilities and the preferred stock."

All of the preferred capital stock was issued in one certificate to and accepted by appellee, who is the sole owner thereof, and for which he paid $20,000; that on July 1, 1924, dividends on this stock were not paid and,

after the expiration of ninety days (December 30, 1924), appellee exercised his option to declare and did declare his preferred stock matured and redeemable, and so notified appellant in writing and demanded of appellant that it be redeemed, and upon failure to forthwith redeem it, he would require a dissolution of the corporation; that appellee's preferred stock was not redeemed nor the dividends paid, nor were any steps taken toward the dissolution of the corporation or the liquidation of its business. Prayer that the corporation be dissolved, that a receiver be appointed to wind up its affairs, etc.

The authority of appellant to issue preferred shares of stock was sanctioned by the statute under which it was organized. But this same authority (§23) prohibits a corporation from declaring or distributing "any dividend to preferred stockholders or to common stockholders, except from the profits earned by the business of the corporation." Moreover, §15a provides that: "Any corporation may also provide in its original or amended articles of incorporation that so long as any of its preferred shares shall remain outstanding it shall not change or enlarge its objects, or extend its corporate existence, except with the written consent of the holders of at least three-fourths in amount of its preferred shares outstanding. Any such corporation, in its certificate issued to its holders of preferred shares, may provide that in the event of a violation of either of such provisions or in the event such corporation shall fail to comply with any of the conditions and stipulations set forth in such certificate, then and in either of such events, the holders of three-fourths in amount of such preferred shares may require the liquidation of such corporation and a distribution of its assets to creditors and stockholders in the order provided by law."

The life of appellant fixed in its articles of incorporation is limited to fifty years. The preferred stock cer-

tificate issued by appellant has no fixed maturity date short of that time. Thus it would seem that all of the shareholders, whether preferred or common, are on an equal basis as to stock maturities, except as otherwise provided in their stock certificates. 1 Morawetz, Private Corp. (2d ed.) §283.

The appointment of a receiver, as prayed in this case, would necessarily result in the dissolution of a going corporation. The parties to this suit were in a court of equity, which, in the absence of express statutory authority, is ordinarily without jurisdiction to dissolve a corporation at the instance of a stockholder, or to appoint a general receiver as a step in winding up its affairs, except in cases where it is clearly made to appear that the objects of the corporation have become impossible, or when its affairs have been so managed, or from other cause, that failure or ruin is inevitable. *Town* v. *Duplex-Power Car Co.* (1912), 172 Mich. 519, 138 N. W. 338; *Ulmer* v. *Real Estate Co.* (1899), 93 Me. 324, 45 Atl. 40; 1 Morawetz, Private Corporations (2d ed.) §§282, 283, 284.

On the subject of appointing receivers, this court, speaking generally, in *Corbin* v. *Thompson* (1895), 141 Ind. 128, 40 N. E. 533, said: "The power of the courts to appoint receivers is one of the highest and most unusual character vested in courts of chancery, and is never exercised in doubtful or evenly balanced cases; but is exercised only where justice would in all probability be defeated by withholding it." See, also, *Elwood* v. *National Bank* (1889), 41 Kans. 475, 21 Pac. 673. This axiomatic statement of the law must not be overlooked, and should be applied in all cases where, by the strong arm of the court, it is sought to take the management of the affairs of a corporation from its proper officers and sequestrate its effects through a receiver. *Town* v. *Duplex-Power Car Co., supra,* p.

528; *Carpenter* v. *Landman* (1916), 192 Mich. 544, 159 N. W. 322. Courts have inherent power in a proper case to appoint a receiver for a corporation (§1300, cl. 7, Burns 1926; *Watkins* v. *National Bank* [1893], 51 Kans. 254, 32 Pac. 914), but such power should be exercised cautiously and especially so where the acts relied upon for such appointment are not, by law, expressly made grounds for the appointment. We refer to these general principles, elementary as they are, because they serve to illustrate the zealous concern of the state over the life of its own offspring, in this case appellant.

Appellee was a shareholder and not a creditor of appellant. As we have seen, he was given certain preferences not enjoyed by other shareholders, and

4.    upon these stipulated preferences in his stock certificate, measured by the law governing shareholders in a going concern, must rest his right to successfully demand the benefit of an extraordinary equitable remedy. *Star Publishing Co.* v. *Ball* (1922), 192 Ind. 158, 134 N. E. 285; *Grover* v. *Cavanagh* (1907), 40 Ind. App. 340, 82 N. E. 104; 1 Cook, Corporations (8th ed.) §271.

Recalling the particular acts which appellant was prohibited from doing, either with or without the consent of the preferred stockholders, and referred to in the articles of incorporation, in the certificate, and in the section of the act herein set out, there is no claim of a violation of a single one of them, unless it can be said that its failure to pay the July 1, 1924, dividend on its preferred stock may be so considered. In this connection it is important to know that there is no attempt to show by the complaint that appellant was insolvent or in imminent danger of insolvency, or that it had any profits whatever out of which to pay dividends on July 1, or at the time this suit was commenced, nor does it ap-

pear that appellant's failure to pay dividends was occasioned by the acts of any of its officers or directors whereby its property had been dissipated, or through any neglect or mismanagement of its corporate affairs.

Appellee takes the position that, except as prohibited by statute, the rights, powers and privileges which may be given or reserved in a preferred stock contract is limited only by the ingenuity of the stockholders and the necessity of the corporation. This position assumes that the instant class of contracts are never opposed to public policy. This assumption is incorrect. A preferred-stock contract, like any other contract, may contravene a statute, or fail to comply with a statute, or injuriously affect the public or be in opposition to a well-established rule of law, and hence unenforceable as being contrary to public policy. 1 Cook, Corporations (8th ed.) §271.

The contract before us may be fairly justified by the articles of incorporation, but whether the statute under which the corporation was organized contemplates liquidation as the remedy for failure to pay dividends at stated periods is another question. True, the financial necessity of a corporation may influence it into a disastrous yet enforceable contract with its stockholders, but in case the parties thereto transcend their authority in any particular, the contract to that extent would be contrary to public policy and void. The provision in the statute giving the preferred stockholders the right to require liquidation of the corporation for failure to comply with the conditions and stipulations set forth in the certificate, must necessarily refer only to such conditions and stipulations as the parties may lawfully make. Neither the certificate nor the articles here involved, if they may be considered together, contain an unqualified promise to pay dividends at a stated time. If they did, such promise would be

ineffective. While counsel for appellee are not contending that such a stipulation would be enforceable, yet they ingeniously insist that dividends were due at the dates fixed in the certificate, and, for failure to pay them at that time or within the ninety days of grace, whether the company had net earnings or not, three-fourths of the preferred stock was given the option to require a dissolution of the corporation.

Looking to appellee's contract, as expressed in his stock certificate and in the articles of incorporation, it appears that he is entitled to an annual eight per cent. dividend, and no more, out of the profits, "payable semi-annually as the net earnings of the company are available to meet the same." Furthermore, by statute, the fund for dividend purposes is limited to "the profits earned by the business of the corporation." §23, *supra.* Moreover, it is unlawful for any corporation, except while in process of dissolution, to declare or pay dividends on its stock out of any funds derived from the sale of stock, or out of any other funds belonging to such corporation, except actual net earnings, surplus or undivided profits. A violation of this act is made a misdemeanor punishable by a fine of not less than $200 nor more than $5,000. Acts 1921 p. 556, ch. 206.

Whether the title to this act is sufficient to cover the provision for the payment of dividends out of net earnings only, we do not decide. It is sufficient to recall that appellant was incorporated on February 15, 1924, and failed to pay a dividend on its preferred stock July 1, of the same year. The reason for such failure, for aught here appearing, was for the want of net earnings or profits out of which to pay the same. Whether all the funds received from the sale of stock was actually— July 1—at work in the business of appellant, we are not advised. But in any event, the only recourse open to appellant for the payment of dividends was out of the

funds received from the recent sale of stock or out of capital, which, in effect, would be repaying to a stockholder a part of the capital paid by him, and, in either event, dividends thus paid would be in direct violation of the statute. *Jorguson* v. *Apex Gold Mines Co.* (1913), 74 Wash. 243, 133 Pac. 465, 46 L. R. A. (N. S.) 637. In *Davenport, Rec.,* v. *Lines* (1899), 72 Conn. 118, 128, 44 Atl. 17, it is said: "The general rule, even in the absence of any statute on the subject, is that dividends, in a going concern, can be properly declared and paid only out of profits, and not out of capital, or assets required for the security and payment of creditors."

The incorporators, and the corporation acting through its board of directors, at the time of issuing the certificate in question, as also appellee at the time he received it, well knew, or must be regarded as knowing, that stock dividends, regardless of the character of the stock, were payable only out of profits arising out of the business of the corporation. They must have realized, possibly from experience or from common knowledge, that such institutions do not always meet the expectations of their promoters in the way of profits. To meet this contingency, the preferred stockholder was given a preference over the holder of common stock by the insertion of a cumulative dividend clause, which we construe as saying to such preferred stockholder that if net earnings at any dividend period are insufficient to pay the contract dividend, it is to be made up out of subsequent earnings. *Englander, Exr.,* v. *Osborne* (1918), 261 Pa. St. 366, 369, 104 Atl. 614, 6 A. L. R. 800; 1 Cook, Corporations (8th ed.) §271. Moreover, we must assume that the parties here involved intended to contract with reference to the law—dividends payable out of net earnings. Furthermore, we are not unmindful of the rule that courts, in construing contracts, will take into consideration the cir-

cumstances surrounding the parties, the subject-matter of the contract, and the objects intended to be accomplished, and give effect to the intention of the parties thereto when this may be done without violating a statute or when not obviously contrary to some well-established rule of law. It seems to us that appellee's theory of the contract, as expressed in his stock certificate and in the articles of incorporation, eliminates the effect of the cumulative dividends and net earnings clauses. Therein is the weakness of appellee's contention. They are a part of the contract which contains the provision, "failure to pay any dividend for ninety days after the same becomes due." These stipulations must be construed together, with the view that each is lawful as well as consistent with one another. When they are thus read, and the failure to pay provision is made dependent upon a showing that the corporation has profits or net earnings out of which dividends on its preferred stock may be paid, the contract will be freed from any charge of illegality or thought of inconsistency.

Attributing to the contract here in question the meaning above suggested, the conclusion necessarily follows that dividends may be due and payable when the net earnings as the result of the business of the corporation are sufficient to pay them. The complaint is insufficient for want of facts to entitle appellee to the remedy—dissolution of the corporation and the appointment of a receiver—which he seeks to enforce under the terms of his certificate.

Judgment reversed, with instructions to sustain appellant's demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

Gemmill, C. J., dissents.

### DISSENTING OPINION.

MARTIN, J.,—I was not a member of the court at the time the opinion herein was filed, but upon consideration of appellee's petition for a rehearing, I believe it should be granted, and I therefore dissent from the action of the court in overruling the petition.

This was not an action to collect a dividend but was one seeking redemption of preferred stock in accordance with the provisions of appellant's charter (articles of incorporation) and in accordance with the provisions in the contract (stock certificate) between appellant and appellee. The law specifically provides, with reference to preferred stock and the redemption thereof, that, "such preferred shares may be redeemed or acquired by the corporation on such terms and in such manner and at such times as may be provided in the original or amended articles of incorporation." §15, Acts 1923 p. 530, §4836 Burns 1926. The act of 1923 also provides that a corporation in its certificate issued to preferred stockholders "may provide that in the event . . . such corporation shall fail to comply with any of the conditions and stipulations set forth in such certificate, then . . . the holders of three-fourths in amount of such preferred shares may require the liquidation of such corporation . . .." §15a, Acts 1923 p. 531, §4837 Burns 1926.

Both the articles of association and the preferred stock certificate provide, in the language of the 1923 act, that the preferred stock holder *shall be entitled* to certain semi-annual dividends and that failure to pay preferred stock dividends for ninety days "after the same shall have become *DUE*" shall cause all of the preferred stock to become due and payable.

The opinion of the court fails to distinguish between

a dividend which is *due* and one which is *payable*. The dividend here was certainly *due*, according to the terms of both the articles of incorporation and the preferred stock certificate, although it could not be *payable* because of the statute which provides that "no corporation shall declare or distribute any dividend . . . except from the profits . . .." §23, Acts 1921 p. 99, §4846 Burns 1926.

The contract here does not call for the unlawful payment of a dividend not yet earned, but it does call for redemption and liquidation of the company at the option of the preferred stockholders if the company does not accumulate earnings from which to pay dividends and does not pay them within a specified time.

The cases cited in the main opinion to the point that a receiver will not be appointed "except in cases where it is clearly made to appear that the objects of the corporation have become impossible or when its affairs have been so managed, or from other cause, that failure or ruin is inevitable," are not in point here where both parties, relying upon an express statute, have written into the very *being* of the corporation, (its articles of association), and into an express contract, (its preferred stock certificate), a positive agreement that if the company fails to pay the stipulated return on the preferred stockholders investment the preferred stockholders may compel a liquidation.

It is true that the relation between a preferred stockholder and a corporation is not that of creditor and debtor. A preferred stockholder's rights are those of a common stockholder, except as they may be limited or enlarged by statute or contract. *Grover* v. *Cavanagh* (1907), 40 Ind. App. 340, 347, 82 N. E. 104. These rights depend upon the terms and construction of the contract with the corporation, so long as the contract is not prohibited by law, 14 C. J. 411, 415, and a corpora-

tion may issue its preferred stock under an agreement to redeem the same at a certain time or on certain conditions, provided it can be done without prejudice to creditors of the corporation and provided there is no fraud upon other stockholders.   14 C. J. 507.

Investors are entitled to protection as well as promoters and in addition to the fact that the clear and unmistakable terms of the company's charter and its preferred stock contract entitles appellee to the relief sought, I believe that modern business conditions wherein preferred stock is held largely by persons not actively connected with the companies' business or management, require a different rule than that stated in the main opinion.   The court holds that "the contract before us may be fairly justified by the articles of incorporation" yet nullifies the contract as being "contrary to public policy."   The authority referred to, 1 Cook, Corporations (8th ed.) §271, states that, "A contract that dividends shall be paid on the preferred stock whether any profits are made or not would be contrary to public policy and void," but as I have pointed out, that is not the situation which exists here.

I know of no public policy which prevents the incorporators of a company from safeguarding the investment of the preferred stockholders to any legal extent they may desire in their articles of association and preferred stock certificate especially in view of the fact that the act of 1923, above referred to, expressly provides that they may do so.

The rule laid down in the main opinion will allow redemption and liquidation clauses to be applicable only where there are earnings and will deprive preferred stockholders of remedies and protection which they may reasonably assume they have, from the clear language of articles of incorporation and stock certificates.

Gemmill, C. J., concurs in the foregoing opinion.