**In re PICCADILLY REALTY CO.**

**SMITH et al. v. PICCADILLY REALTY CO.**

**No. 5464.**

Circuit Court of Appeals, Seventh Circuit.
June 21, 1935.

Rehearing Denied July 30, 1935.

258

Charles Remster, H. H. Hornbrook, Albert P. Smith, Paul · Y. Davis, Kurt F. Pantzer, Ernest R. Baltzell, and William G. Sparks, all of Indianapolis, Ind., for appellee.

H. K. Bachelder, Wm. C. Bachelder, and Fred E. Barrett, all of Indianapolis, Ind., for appellants.

Before EVANS, FITZHENRY, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from an order of the District Court granting appellee's petition seeking reorganization (under section 77B of the Bankruptcy Act, U. S. C. tit. 11, § 207 [11 USCA § 207]) of the Piccadilly Realty Company.

As will appear from the stipulated facts and the court's findings of fact based thereon, the relevant substance whereof is set out in the. margin[1], the main question

[1] The debtor company is an Indiana corporation whose sole business is owning and operating a large apartment and store building in Indianapolis. The company's capital is represented by 1,500 shares of common stock and 2,850 shares of preferred stock, all of $100 par value paid up and outstanding. One David T. Smith owned practically all the common stock, 751 shares of which were being held in trust for him so long as any of the preferred stock remained outstanding, Smith having proxy to vote the stock

is whether, under the facts, matured installments of preferred stock and past-due dividends on the preferred stock, contracted to be paid, may be the basis of a petition under section 77B.

The company's financial condition, at the time the order herein was made, apart from its preferred stock obligations, would not, in our judgment, have justified the invocation of section 77B. There was its

so long as the company was not in default to its preferred stockholders.

November 14, 1931, the Indiana State court, on complaint filed by a creditor at the request of the corporation through Smith, its then president, appointed a receiver for the corporation and all its assets, and the receiver has ever since been operating the property under that receivership.

The financial condition of the company, as was stipulated and found by the District Court, is:

| | |
|---|---:|
| Apartment and store building and grounds have assessed valuation | $127,640.00 |
| Cash in hands of receiver, approximately | 6,500.00 |
| Accounts and bills receivable by receiver | 1,100.00 |
| Average gross income of receiver per month | 2,300.00 |
| Operating expenses per month (before taxes, depreciation, and administrative costs) about | 1,260.00 |
| Taxes for 1933, payable in 1934, were | 3,995.12 |
| Debts owing prior to receivership, unpaid | 1,756.00 |
| Claim of Smith for services performed for receiver, filed in pending receivership | 6,600.00 |
| Receiver and his attorneys have been allowed and paid as partial allowance | 1,250.00 |

No dividends have been paid on preferred stock since August 1, 1931, and such dividends, at six per cent. per annum, accumulated to the time of the District Court's order, amount to $55,575; and on that date $25,000 par value of preferred stock had passed maturity date.

At a stockholders' meeting of the company held December 17, 1934, called and attended only by preferred stockholders, it was voted to remove the then directors; and new directors were then elected who thereupon chose new officers. The petition was filed by authority of the newly chosen directors, all of whom were preferred stockholders.

The company's property and assets have not been conveyed or encumbered; its taxes are not delinquent; its net earnings have been distributed to stockholders as dividends or in redemption of preferred stock; no dividends have ever been paid on common stock; there are no undivided profits or surplus; and since the preferred stock was sold no stock of any kind has been issued. authorized or sold

The company's articles of association provide that the capital stock shall consist of $150,000 of common stock and $300,000 of preferred stock; that the preferred stock shall be entitled to cumulative dividends at six per cent. per annum, payable quarterly, before any dividend is paid on common stock; and that on liquidation of the company the preferred stock and the accumulated dividends thereon shall be first paid. It is specified that "the Company shall, out of its earnings or thru the proceeds of the sale of additional common stock, redeem its outstanding preferred stock at the par value thereof, plus all accumulated dividends at such time or times as may be fixed in the certificates issued therefor." It is provided that if the company shall be in default in its obligations to preferred stockholders, then, so long as the default continues, the preferred stockholders shall have voting rights, share for share, with common stockholders; otherwise exclusive voting right shall be in the common stock. And it is provided that all other conditions governing the preferred stock shall be stated in the certificates issued therefor.

The underwriting agreement between the company and the trustee to whom it contracted to sell and did sell the preferred stock issue provides that the preferred stock shall bear cumulative dividends at six per cent. per annum, payable quarterly, and specifies that that stock shall be redeemable, in specified amounts, on February 15 of each of fifteen successive years, beginning with the year 1930; and that all other conditions governing the preferred stock shall be named in the certificates issued therefor, the form of such preferred stock certificates being attached to the agreement. It is specified that the company will pay no salaries to its officers or dividends on common stock until all of its obligations to preferred stockholders during the current year are paid; and that after the completion of the contemplated improvements the company shall not incur floating indebtedness in excess of $3,000; and that it shall deposit monthly in advance with the trustee one-twelfth of the total obligations of the company to its preferred stockholders specified to be paid during the current year, such deposit to be applied by the trustee to the payment of the dividends and redemption of preferred stock at the times fixed therefor.

The form for the preferred stock certificates makes substantially these same

valuable unencumbered real estate, having average gross monthly income of about $2,300, with cash in the receiver's hands of about $6,500, as against its unpaid corporate debts of about $1,756. True, there was on file in the state court Smith's claim for $6,600 for his services performed for the receiver; but it is at best extremely questionable whether, for the purpose of invoking section 77B, expenses incurred in maintaining the receivership should have been considered as debts. But even if includable as debts, it is evident that with anything like a proper administration of the receivership it could not be long before the net income from the property would overtop all the outstanding obligations, other than such as are founded on alleged preferred stock maturities.

In comparison with the large unencumbered corporate assets, the debts, apart from preferred stock liabilities, were so negligible, and their payment within reasonable time so absolutely secured and assured, that we wholly disregard them as an influential factor, and we consider only whether the matured dividends and the past-due preferred stock under the stipulation of the preferred stock certificates are a lawful basis for the invocation of section 77B.

■ The accumulated unpaid dividends of six per cent. per annum contracted to be paid in the preferred stock certificates, and at the time the petition was filed amounting to $55,575, cannot be regarded as a debt of the corporation within the purview of the bankruptcy law and particularly section 77B thereof. The Corporation Act of Indiana (1921, § 23, Burns' Ann. Stat. 1926, § 4846), in force at the time of the incorporation of appellee and the issuance of the preferred stock, provided:

"No corporation shall declare or distribute any dividend to preferred stockholders or to common stockholders except from the profits earned by the business of the corporation, and if any such distribution shall be made, the directors shall be personally liable to creditors to the extent of all such distribution, and the stockholders shall be liable to refund such dividends received by them. * * *"

In the 1929 revision of the Indiana corporation laws there is, as applicable to the facts here, substantially the same limitation upon paying dividends. Acts 1929, c. 215, § 12, Burns' Ann. St. 1933, § 25-211. In Allied Magnet Wire Corp. v. Tuttle, 199 Ind. 166, 154 N. E. 480, 481, 156 N. E. 558. 50 A. L. R. 252, it was held that an agreement to pay dividends on preferred stock was not enforceable where there were no "profits earned by the business of the corporation."

We may assume, without deciding, that where there are surplus profits out of which dividends might be paid such an agreement may be enforced; and it might then be said that out of such an undertaking to pay dividends a corporate debt would arise in favor of the preferred stockholders. But where, as here, there was neither surplus nor profits out of which dividends might be paid, the promise to pay dividends, however absolute on its face, was unenforceable, and the relation of debtor and creditor did not arise therefrom. This eliminates the dividends as a corporate debt.

provisions respecting the preferences of the preferred over common stock with respect to payment of dividends and principal, and provides that "the Company agrees to redeem the shares of stock represented hereby at their par value plus accumulated dividends, on the 15th day of February, 19——." It provides that the company will not convey or encumber its property without the consent of the holders of three-fourths of its outstanding preferred stock; and it contains the like provision as the underwriting agreement respecting the limitation of current indebtedness to $3,000, and also the same agreement respecting the monthly deposit in advance with the trustee of one-twelfth of the obligations to preferred stockholders maturing during the current year, and for the application of such deposits solely to the payment of the specified dividends and maturities of the preferred stock accruing that year. It has also the same provision with respect to the voting rights of common and preferred stockholders; and it specifies that upon the failure of the company to comply with all its obligations, or its failure to pay dividends at the time fixed therefor, "whether such failure be on account of lack of funds sufficient to lawfully pay the same, or from any cause whatsoever, the shares represented hereby shall be immediately redeemable, and, if the Company fails to redeem the same on demand, the holder hereof may require the liquidation of the Company and the application of its assets to the payment of its creditors and stockholders in the order provided by law."

■ Respecting the default in the undertaking to make annual payments and retirement of preferred stock, we are met with the question whether upon the maturity of such a promise there arises the status of debtor and creditor on account of which resort may be had to section 77B as in cases of corporate indebtedness generally. Section 77B (b), 11 USCA § 207(b), contains this sentence:

"The term 'claims' includes debts, securities, other than stock, liens, or other interests of whatever character."

If this does not mean that corporate stock shall not be the basis of any "claim" whereon to commence proceedings under that section, we are at loss to understand what it does mean. Our best judgment of its meaning is that stock in a corporation, regardless of its statutory or stipulated rank, privileges of any claim, or limitation, cannot be the basis for the invocation of section 77B, and therefore matured corporate promises to retire or pay corporate stock cannot be considered corporate debts in a proceeding under 77B.

Appellee argues that here the articles of association and the underwriting agreement and the preferred stock certificates approximate "as nearly as possible to a mortgage security"; but these parties have undertaken with the corporation the relation of stockholders, and that relation cannot be shifted to that of mortgagee for the purpose of enabling preferred stockholders to qualify as creditors under section 77B. It has been held in Indiana that a preferred stockholder, whatever the stipulated preferences may be, is nevertheless a "party to the business venture, along with the common stockholder." Star Publishing Co. v. Ball, 192 Ind. 158, 134 N. E. 285, 289.

The claim out of which it is contended this corporate debt arises is predicated directly and wholly upon "stock" of the corporation, which section 77B excludes as a basis for application of the section.

■ It seems to us that this controversy is one wholly between the preferred and the common stockholders for control of the corporation, and we are satisfied that section 77B was not enacted for the purpose of adjusting such disputes where substantial claims of other and actual creditors are not involved.

We believe the court erred in granting the petition, and the order appealed from is reversed with direction to the District Court to dismiss the petition.