**In re WACO, BEAUMONT, TRINITY & SABINE RY. CO.**

No. 2152.

District Court, S. D. Texas, Houston Division.

Dec. 13, 1946.

Judgment Affirmed Nov. 14, 1947.

See 165 F.2d 788.

Louis W. Graves, Jr., of Houston, Tex., for petitioner George O. John, administrator of estate of R. C. Duff, deceased.

Vinson, Elkins, Weems & Francis, C. E. Bryson and W. H. Francis, Jr., all of Houston, Tex., for T. L. Epperson, receiver.

KENNERLY, District Judge.

This is a Petition by George O. John, Administrator of the Estate of R. C. Duff, deceased, filed under Sections 205 et seq., Title 11 U.S.C.A., to reorganize the Waco, Beaumont, Trinity & Sabine Railway Company, a railroad corporation organized under the Laws of Texas. Such Railway Company, represented by the same Counsel, joins in such Petition, and its State Court Receiver also joins in the Petition. The question for decision is whether under the Law such Petition has been filed "in good faith." A hearing was had and the evidence heard.

The facts are these:

(a) Railway Company is a corporation organized under the Laws of Texas and owns a line of railroad in this District and Division. Its railroad consisted originally of forty-one and a fraction miles of track, but some parts have been permanently abandoned, and operation of other parts temporarily abandoned, to where there are now approximately nine miles in operation.

(b) Such Railway Company has been since February 6, 1930, in the hands of and operated by a Receiver appointed in the case of J. T. Baird v. Waco, Beaumont, Trinity & Sabine Railway Company, No. 4832, in the 12th Judicial District Court of Trinity County, Texas.

(c) There is outstanding against such Railway Company its First Mortgage Bonds in the approximate sum of $780,000, secured by a lien on all its properties. Such Bonds are owned by the Estate of R. C. Duff, deceased. Such Estate is insolvent. It has no funds which can be put into a reorganization of the Railway Company. It is suggested by Counsel that such Estate may take Stock in a reorganized company in exchange for its Bonds.

(d) During his operations, the Receiver has incurred considerable indebtedness, which is approximately as follows:

| | |
|---|---|
| Receivers Certificates unpaid.. | $12,733.56 |
| Labor Claims against the Receiver and incurred by the Receiver and unpaid........ | 64,243.97 |
| Ordinary claims incurred by the Receiver and audited for voucher and unpaid ........ | 8,518.70 |
| Miscellaneous indebtedness owing by the Receiver and unpaid ..................... | 13,178.95 |
| Total indebtedness of Receiver ............... | $98,675.18[1] |

All this indebtedness incurred by the Receiver is a lien against the properties of Railway Company. It has been suggested by Counsel that the properties of the Company may be relieved of such lien in part by the holders thereof failing to file in this Court their claims. I am not impressed by this view. A transfer of custody of the properties from the State Court to this Court should not work a forfeiture of the rights of the persons to whom the State Court Receiver is indebted.

(e) There are Taxes due and unpaid approximately as follows:

| | |
|---|---|
| State and County Taxes owing and perhaps School District, approximately as follows | $15,163.33 |
| Penalties, etc. .... | 4,371.00 |
| Total ................. | $19,534.33 |
| Franchise Taxes owing to State ................... | 9,600.00 |
| Total ................. | $29,134.33[2] |

The statement was also made by Counsel that the amount of these Taxes may be scaled down. I do not think that the Taxes themselves can be legally scaled down. It may be that some reduction in the amount of penalties may be obtained, but I am doubtful if the amount will be material.

(f) There is an indebtedness incurred by Railway Company prior to Receivership as follows:

| | |
|---|---|
| Labor claims owing by the Company prior to the Receivership and unpaid..... | $ 57,229.58[3] |
| Miscellaneous indebtedness owing by the Company prior to Receivership and unpaid ..................... | 798,135.34[4] |
| Total ................. | $855,364.92 |

(g) The "junk value" placed by the Receiver in his testimony upon *all* the properties of the Railway Company, if "junked," is $100,000, and the value placed by him upon all the properties of the Company considered as a "going concern" is $250,000. I am extremely doubtful of these values. I think they may be scaled down at least 25%.

(h) The parties hereto and the Receiver seem very hopeful of the amount of business that Railway Company would do if reorganized, but the record of business done in the past and the earnings of the past do not justify these hopes.

(i) The greatest difficulty, however, is that it is undisputed that it would take a large sum of fresh money to put the line in shape for profitable operation. The Receiver says that it would take $346,000 to put the whole line of 23.6 miles in operation, or $50,000 to put 18.5 miles of it in operation. Besides the Company would need operating capital of, say, $10,000. The evidence as to the present condition of the property makes me think these figures are too small.

(j) Anyway, it is perfectly clear that whether the whole line or a part thereof is put in operation, it will take a large sum of fresh money, and none of the interested persons now before the Court have any money, nor do they bring forward any tangible plan for obtaining it, or show

---

[1] This figure is given as $85,168.84 in Statement filed September 25, 1946, by Petitioner.

[2] This figure is given as $32,946.07 in Statement filed September 25, 1946, by Petitioner.

[3] This figure is taken from Statement filed by Petitioner September 25, 1946.

[4] This figure is taken from Statement filed by Petitioner September 25, 1946.

any effort to obtain it. My view and finding is that it could not be obtained.

 1. I think it is not contemplated under either the letter or the spirit of the Bankruptcy Railroad Reorganization Act that a petition such as this will be approved as filed in good faith, where the Judge regards and finds, as I do here, a reorganization is absolutely hopeless. I think the same rule should be applied here as in reorganization of ordinary corporations and that what is said in R. L. Witters Associates v. Ebsary Gypsum Co., 5 Cir., 93 F.2d 746, 748, is applicable. I quote (Italics mine): *"Under the rule they establish, if it is clear that under no reasonable possibility can the debtor conform to and obtain the benefits of the statute, and that therefore the petition was manifestly filed, if by the debtor, for delay, or if by petitioning creditors, for harassment, the petition may be dismissed before the plan stage is reached, as wanting in the good faith the statute requires.* Under that rule, where the good faith of the filing is attacked, before the plan stage has been reached, unless the impossibility of conforming to and obtaining the benefits of the statute clearly appears, the petition should not be dismissed as not filed in good faith. It should be retained, and questions of plan and reorganization worked out in the thorough and complete way the statute provides for later steps in the proceedings. What then is meant by the statutory requirement that the petition be filed in 'good faith' is that it must appear that the petition, whether an involuntary one, filed by creditors against the debtor, or a voluntary one, filed by the debtor himself, was filed not for the purpose of harassing the debtor, or of hindering and delaying creditors, Re Piccadilly Realty Co., 7 Cir., 78 F.2d 257, but with the purpose and reasonable belief that under the processes provided for by section 77B [11 U.S.C.A. § 207], the debtor is in a position to conform to the requirements and to obtain the benefits of the statute."

I find nothing in New England Coal Co. v. Rutland, 2 Cir., 143 F.2d 179, in conflict with this view.

The Petition will be dismissed.