## JOHN v. WACO, BEAUMONT, TRINITY & SABINE RY. CO.

### No. 11938.

Circuit Court of Appeals, Fifth Circuit.

March 1, 1948.

SIBLEY, Circuit Judge, dissenting.

---

[9] Summerville v. Stockton Milling Co., supra.

L. W. Graves, Jr., of Houston, Tex., for appellant.

C. E. Bryson, of Houston, Tex., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This is a proceeding under Section 77 of the Bankruptcy Act, as amended,[1] for the reorganization of the Waco, Beaumont, Trinity & Sabine Railway Company. It was filed by a creditor of said corporation on July 9, 1946. The answer of the debtor admitted all of the material allegations of the petition; but the judge did not approve the petition as properly filed, and dismissed the same because he was not satisfied that it was filed in good faith. He found that the petition was manifestly filed for delay, since there was no reasonable possibility of the debtor obtaining the benefits of the statute. The testimony, both oral and documentary, introduced on the hearing below convinces us, as it did the district judge, of the futility of this proceeding. The judge's opinion is reported in 74 F. Supp. 691.

The asserted grounds of the petition for rehearing are that the district court lacks authority (a) to find that there is no reasonable possibility of effecting a reorganization, and (b) lacks authority to prejudge the issue of abandonment of a railroad company engaged in interstate commerce by refusing to permit the filing of a petition for reorganization.

As to the first contention, the statute provides that "the judge shall enter an order either approving [the petition] as properly filed under this section, if satisfied that [it] complies with this section and has been filed in good faith, or dismissing it, if he is not so satisfied."[2] The appellant argues that under Section 77, sub. d[3] the court below was required to keep this case on its docket for six months, during which time the debtor must file a plan of reorganization. The answer to this, we think, is that said six months runs from the date

of "the entry of the order by the judge approving the petition as properly filed,"[4] and no such order was ever made or entered in this case. Obviously, therefore, the just-quoted provision under subsection d is not a limitation on the authority of the court under subsection a to dismiss a petition for reorganization if not satisfied that it was filed in good faith.

As to appellant's second proposition, there is no basis for the contention that the court prejudged the question of abandonment of operation of the railroad. · In the first place, there was no such question before the court below; and, as to the issue that was in fact before it, the court granted a full hearing and did not prejudge the matter in any sense. It is admitted that the railway is now being operated by a state-court receiver, and has been so operated for many years. So far as this record shows, no trustee was appointed by the bankruptcy court, and the state-court's custody of the debtor's property has not been disturbed. Moreover, in cases such as this, the statute provides as follows: "If any such petition shall be so approved, the proceedings thereon shall continue with like effect as if the railroad corporation had itself filed a petition under this section. In case any petition shall be dismissed, neither the petition nor the answer of a debtor shall constitute an act of bankruptcy or an admission of insolvency or of inability to meet maturing obligations or be admissible in evidence, without the debtor's consent, in any proceedings then or thereafter pending or commenced under this Act or in any State or Federal court."[5]

This debtor was evidently insolvent when the state-court receiver was appointed in 1930. Eighteen years of operation in receivership have increased its debts, diminished its assets, and otherwise worsened its financial condition. The first mortgage bonds are still unpaid, to which have been added receiver's certificates, labor claims, and miscellaneous indebtedness incurred by the receiver. To transfer custody of the debtor's properties from the receiver in

---

[1] 11 U.S.C.A. § 205, sub. a.
[2] 11 U.S.C.A. § 205, sub. a.
[3] 11 U.S.C.A. § 205, sub. d.
[4] 11 U.S.C.A. § 205, sub. d.
[5] 11 U.S.C.A. § 205, sub. a.

equity to a trustee in bankruptcy would not produce the money admittedly needed to put the line in shape for profitable operation.

■ Section 77 of the Bankruptcy Act, as amended, does not require a petition for reorganization to be approved by the judge as filed in good faith if he is not satisfied that it was so filed and the evidence is sufficient to warrant a finding of lack of good faith. If the judge had once approved the petition as properly filed, a different question would be presented, and a six-months delay might have been mandatory; but there was no such approval. The district judge, being experienced in railway reorganizations, knew that operating the depreciated properties of an insolvent railway corporation, without cash or credit, is a serious, difficult, and dangerous business. The question of abandonment of operation may be for the Interstate Commerce Commission; but it is not for the Commission to decide whether the bankruptcy court will take jurisdiction in rem in a reorganization proceeding when it is apparent that all efforts to obtain the benefit of Section 77 will be futile. The statute is plain; it says that the judge shall dismiss the petition if not satisfied that it was filed in good faith. On the hearing, the judge closely interrogated the witnesses and attorneys as to the possibility of reorganization, and not one of them gave any rational hope or plan of a successful reorganization.

■ The statement that the district judge is the only one who thinks the reorganization should not proceed is inaccurate and misleading if it means anything more than that a creditor filed the petition and the corporate debtor consented to it. The legal effect of this was the same as if the petition had been filed by the debtor,[6] and in both instances it was the duty of the judge to dismiss the petition if not satisfied that it was filed in good faith.[7] Obviously, it was not so filed if there was no reasonable basis of effecting a successful reorganization. It is argued that the judge acted too hastily in dismissing the petition and too slowly in holding it for five months without approving it. The statutory duty of the judge to approve or dismiss is in the alternative, and the delay was in favor of the litigants, not prejudicial to them. They were given more time to show what advantage, if any, might ensue by supplanting the state court's receivership by a trustee in bankruptcy. No function of the Interstate Commerce Commission was suppressed. The latter acts cooperatively with the bankruptcy court only after approval of the petition. In the absence of such approval, the Commission's jurisdiction to permit or deny abandonment of railway operation is independent of, and undiminished by, the judge's failure to take jurisdiction in bankruptcy.[8]

This railroad was originally operated over lines approximately 42 miles in length, but all operations had been abandoned, when the petition was filed, except over about 9 miles, without the Commission making any order or applying to any court to require or secure continued operation.[9] Neither the Commission nor the bankruptcy court can furnish the money necessary for continued operation, and the court's jurisdiction should not be invoked or permitted to furnish a false basis of credit to secure new funds for operating expenses.

We think the petition for rehearing should be, and the same hereby is, denied.

SIBLEY, Circuit Judge (dissenting).

The District Judge found that a reorganization was hopeless, and for that reason alone dismissed the petition as not filed in good faith. He relied on decisions in reorganization proceedings involving ordinary corporations, not railroad companies. The judge is the judge of proper reorganization in the former cases: The Interstate Commerce Commission has the final decision in the case of a railroad company within its jurisdiction. The Commission was duly served here but has not appeared. It has the right to propose a plan, but not till the petition has been approved. The judge here has delayed for five months acting on the approval. Nevertheless the pe-

6 11 U.S.C.A. § 205, sub. a.
7 11 U.S.C.A. § 205, sub. a.
8 49 U.S.C.A. § 1(18).
9 49 U.S.C.A. § 1 (20).

titioning creditor has proposed a tentative plan. The railroad company has approved the plan, and filed an answer adopting the petition and joined in its prayers. The receiver has done the same thing. Everyone thinks the case should proceed except the judge. His objection is that cash will be required, and he does not see where it is coming from. I do not think that is his responsibility on a question of good faith in filing the petition. If the Interstate Commerce Commission can approve some plan as sound and acceptable to it, may not the community served by the railroad subscribe the necessary money? Railroads are often built that way.

The public, as well as stockholders and creditors, are interested in preserving the existence of an interstate carrier, and the Commission is the representative of the public, and has peculiar competence in a matter of reorganization. Here we have a railroad company which admittedly cannot carry on in its present circumstances. It and its creditors and its receiver all wish to get it reorganized and express hope that it can be done. The 'Commission has not been heard from, or really been afforded an opportunity to be heard, since the case was not really in court. I see no want of good faith in this effort to reorganize. The court should have afforded the opportunity.