**In re WYOMING RY. CO.**

No. 2419.

United States District Court,
D. Wyoming.

Dec. 15, 1950.

James Munro of Sheridan, Wyo. for Lige Miller, creditor.

Joseph Carst of Douglas, Wyo. for C. Porter Dickson and Wyoming Ry. Co., debtor.

Burton S. Hill of Buffalo, Wyo., for R. E. McNally, trustee.

H. Glenn Kinsley of Sheridan, Wyo., and J. L. Rice and J. C. Street of Denver, Colo., for Chicago, B. & Q. R. Co., creditor.

T. BLAKE KENNEDY, District Judge.

On July 9, 1948, a petition was filed in this court seeking the benefits of Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, which subsequently and after hearing was approved as to form. The proof showed that undoubtedly the debtor, Wyoming Railway Company, was insolvent. Previously a receivership in equity was pending in the Fourth Judicial District of the state in and for the county of Johnson, Wyoming, against this railroad. A subsequent order, after the approval of the petition and the appointment of a Trustee, whose appointment was approved by the Interstate Commerce Commission, brought all the assets of the debtor into the custody of this Court. A plan of reorganization was submitted by C. Porter Dickson, who was the owner of the entire stock of the company and the outstanding first mortgage bonds, which plan was submitted to the Interstate Commerce Commission in accordance with the provisions of the Railway Reorganization Act. Thereafter and on April 21, 1950, the plan filed on behalf of the petitioner, C. Porter Dickson, was rejected for the reasons set forth in the report of the Commission that it was found to be prima facie impracticable. No further plan for reorganization was filed. In the meantime the matter of advertising for and requiring the proof of claims was provided by an order of the Court and various claims were filed. The record shows in addition that the railroad had not been operated since about December 1947 and was in a deteriorated condition. The property was retained in the possession of the trustee during all this period with the expectancy that another plan of reorganization would be presented either by or on behalf of the debtor by the owner of the corporate stock and the holder of the principal mortgage security but nothing in the way of another plan was submitted by the owner of the stock and holder of the securities or any other creditor. On July 24, 1950, Lige Miller, one of the common creditors filed a petition in the court seeking relief and setting forth various conditions existing in regard to the railroad and asserting that a reorganization was not feasible and that the property of the road in the hands of the trustee was deteriorating in value and praying that the claims against the railroad should be determined and fixed as to priority, the allowance of the compensation to the trustee and his attorney be fixed, together with the prayer that the assets of the debtor should be sold and the proceeds over and above the expenses of the administration of the bankruptcy proceeding should be distributed to the creditors. This meant a liquidation of the railroad.

To this petition answers of several creditors were filed, including the answer of Dickson, which took issue with some of the allegations of the petition heretofore mentioned, but setting forth in said answer that a new plan of reorganization was then in the making and seeking the protection of the Court until the first of January 1951 within which to prepare and present said new plan to the Court and the Interstate Commerce Commission. This petition and other matters needing consideration were set down before the Court at its Sheridan Term in August of the present year, at which hearing time was fixed for the filing of objections to claims, the appointment of counsel for the Trustee, a hearing on a specific claim for some railroad property which had already been paid for before the bankruptcy proceedings ensued, and perhaps other controverted questions. Upon the showing made, the Court made an order allowing the said Dickson or the Wyoming Railway Company until December 1, 1950, within which to file with the Court and the Interstate Commerce Commission a new plan of reorganization for the debtor company.

On its own motion the Court suggested the point as to whether or not the Court had jurisdiction in the reorganization proceeding under Section 77 of the Bankruptcy Act to liquidate the affairs of the railroad and suggested that counsel interested should submit briefs to the Court outlining their views as to the question of this jurisdiction. Some of the counsel representing creditors, the trustee, and Dickson, the owner of the stock and the mortgage bonds, have submitted their views upon the point. Upon the hearing on August 24, 1950, the Court having allowed time within which a new plan of reorganization might be submitted to the Court and the Interstate Commerce Commission until December 1, 1950, it was ordered that the hearing upon the petition of Miller, the creditor, be postponed until after that date for the reason that in the event a plan should be submitted acceptable to the Commission and to the Court, the determination of the current question of jurisdiction would be eliminated. However,

should no plan of reorganization be filed which would be so approved it would become immediately pertinent as to what the Court might be permitted to do in the proceeding, for obviously it could not be carried along indefinitely in the perhaps vain hope that eventually some plan of reorganization might be filed.

Three possible methods in the disposition of the matter have been suggested: (1) Conversion of this proceeding into a regular bankruptcy proceeding and effecting a liquidation through the methods of general bankruptcy courts; (2) Conversion of the present reorganization proceeding into an equity proceeding and thereby effecting the same end; and (3) To dismiss the proceeding or turn it over to any state or Federal Court under the appointment of a receiver, if such receivership proceeding were in existence or should be filed prior to any final disposition by this Court under section 77. There are undoubtedly some phrases in section 77, 11 U.S.C.A. § 205, which squint toward the possibility of some of these methods of disposition.

Counsel assert that they have been able to find no authorities directly in point upon the question here posed. This is perhaps understandable by reason of the fact that the reorganization act has been largely invoked by large railroad organizations where usually some plan of reorganization has been carried out so that the courts have not been definitely confronted with a situation of determining what should be done with the property in the event of no acceptable plan being presented.

As to the suggestion that this Court has the power and jurisdiction in a reorganization proceeding of a railroad to convert it into a general bankruptcy proceeding I am firmly of the opinion that there is nothing in the provisions of Section 205 which would justify such conclusion. In the first place under 11 U.S.C.A. § 22 a railroad is not subject to voluntary or involuntary bankruptcy, which seems to nullify the idea of converting the proceeding into one of general bankruptcy.

The quotation from Section 205(a), as follows: "If the petition is so approved, the

374

court in which such order is entered shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located, and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose", does no more than permit the Court to exercise equity powers which are not inconsistent with the section, or, in other words, those that are in harmony with the *plan of reorganization*. This certainly is not sufficiently specific language to authorize the Court to convert the proceeding into one in equity as this would not be in harmony with the general purposes of the reorganization statute itself. Somewhat similar language is found in Section 205(c) (2), which reads:

"The trustee or trustees so appointed, upon filing such bond, shall have all the title and shall exercise, subject to the control of the judge and consistently with the provisions of this section, all of the powers of a trustee appointed pursuant to section 72 or any other section of this title, and, to the extent not inconsistent with this section, if authorized by the judge, the powers of a receiver in an equity proceeding, and, subject to the control of the judge and the jurisdiction of the Commission as provided by chapter 1 of Title 49 as on August 27, 1935, or thereafter amended, the power to operate the business of the debtor."

Neither is this language sufficient in my opinion to give the Court power to convert the proceeding into an equity receivership, but simply extends the powers of the Court in the administration of the duties connected with reorganization to effect that sole end. Counsel also suggest Section 205, subsection (g), which reads as follows: "If in the light of all the existing circumstances there is undue delay in a reasonably expeditious reorganization of the debtor, the judge, in his discretion, shall, on motion of any party in interest or on his own mo-

tion, after hearing and after consideration of the recommendation of the Commission, dismiss the proceedings. Upon the filing of such an order of dismissal, all right, title, or interest of the trustee or trustees shall vest by operation of law in the debtor *unless otherwise provided by such order."*

In this respect counsel rely upon the phrase "unless otherwise provided by such order" as giving the Court rather exceptional authority to apparently do anything with the proceeding which he might wish. I am of the opinion that such language does not give authority to the Court to convert or transfer the proceeding into one of a different class but the phrase is simply intended to allow the Court in its discretion to protect administration and expense claims which may have been incurred in the proceeding of reorganization until such time as some process may be worked out for the protection of all interests which have arisen during the pendency of the bankruptcy proceeding. Another section of the Act referred to is 205, subsection (i), which in part reads, as follows: "If a receiver or trustee of all or any part of the property of a debtor has been appointed by a Federal or State court, whether before or after August 27, 1935, a petition or answer may be filed under this section at any time thereafter by such debtor, or its creditors as provided in subsection (a) of this section, and if such petition is approved, the trustee or trustees appointed under this section, or the debtor until such trustee or trustees are appointed, shall be entitled forthwith to possession of and be vested with title to such property, and the judge shall make such orders as he may deem equitable for the protection of obligations incurred by the receiver or receivers or prior trustee or trustees and for the payment of such reasonable administrative expenses and allowances in the prior proceedings as may be fixed by the court appointing such receiver or trustee. Whether or not a receiver or trustee has been appointed by a Federal or State court prior or subsequent to the institution of a proceeding under this section and upon the dismissal of such proceeding under this section, the

judge may include in the order of dismissal appropriate provisions directing the trustee or trustees, or the debtor if no trustee has been appointed, at the time of such order of dismissal, to transfer possession of the debtor's property within the territorial jurisdiction of such Federal or State court to the prior receiver or trustee, if a prior receiver or trustee has been so appointed by such Federal or State court, or to a receiver or trustee appointed by such Federal or State court, upon such terms as the court in the proceeding under this section may deem equitable for the protection of the obligations incurred by any trustee or trustees appointed under this section and for the payment of administrative expenses and allowances in the proceedings hereunder. Upon the filing of such order of dismissal all title to the property in the trust estate shall vest as therein provided. * * *"

This, in connection with subsection (g) hereinbefore referred to, evidently looks to the eventual dismissal of the proceeding, provided no reorganization is effected and for the protection of those who have served during the period of the pending reorganization proceeding. This view is strengthened somewhat by cases cited by counsel for one of the creditors, State of Tennessee v. Taylor, 6 Cir., 169 F.2d 626, in which a dismissal was based upon the fact that it was shown not to have been filed in good faith. It is authority to the point at least that where the ultimate end sought to be accomplished is abandoned through attempted liquidation, this result can not be accomplished through the reorganization act. Another case is John v. Waco, Beaumont, Trinity & Sabine Ry. Co., 5 Cir., 166 F.2d 419, in which nearly all of a short line of railroad had been abandoned for a period of years. The petition was dismissed upon the ground that it was not filed in good faith. While this Court by allowing the petition to be filed has held that it was filed in good faith, it is apparent now that it was rather a forlorn hope for reorganization and if it fails I see no reason why the Court should not hold it is virtually equivalent to an absence of good faith after so long a time of inactivity.

Other cases are cited which are under the general corporate reorganization act which seem to hold that under Chapter 10 pertaining to such reorganizations the Court does not have power to liquidate. This would seem by analogy to apply to proceedings under Section 77. It should be borne in mind that the alignment and adjustment and rights of claimants vary greatly under these bankruptcy acts and under general receivership proceedings in equity. Therefore any process of liquidation should be conducted in a manner authorized by law for the adjudication of the rights of creditors and claimants which is adapted for that purpose. My conclusion is that the Court has no authority in the event of the failure of an accepted plan of reorganization to retain jurisdiction of the proceeding but must either dismiss and by order vest title in the debtor under subsection (g), or transfer it to a Court which previously had equity jurisdiction or which may have such jurisdiction to take over the matter prior to the dismissal under subsection (i), with the right to use such safeguards as are necessary to protect the expenses of administration in the current proceeding.

Obviously under the order of this Court that the hearing upon the petition of creditor Miller should be postponed until after December 1, 1950, within which time was allowed for submitting a new plan of reorganization for the debtor company, nothing can be accomplished by a decision upon the Court's jurisdiction in the premises for the reason that should a plan of reorganization be submitted and approved by the Commission and the Court the question here considered would then become moot. But it has been thought advisable in view of the doubt which has been cast upon the situation concerning any feasible plan of reorganization in the interest of expedition, to review the possible disposition of the proceeding so as to prevent any additional delay which has already exceeded any reasonable anticipation.