In the Matter of **TENNESSEE CENTRAL RAILWAY COMPANY, Debtor.**

No. Bk. 67-2263.

United States District Court
M. D. Tennessee,
Nashville Division.

July 9, 1969.

---

William D. Ruckelshaus, Asst. Atty. Gen., Civil Division, and Paul A. Sweeney, Special Asst. Atty. Gen., Washington, D. C., Charles H. Anderson, U. S. Atty., and Martha Craig Daughtrey, Asst. U. S. Atty., Nashville, Tenn., for petitioner, the United States.

A. Battle Rodes, Trustee, Carmack Cochran, Nashville, Tenn., for Tennessee Central Ry. Co., debtor.

David M. Keeble, Nashville, Tenn., for Union Pacific Railroad Co., Spokane International Railroad Co., Penn Central Co., Seaboard Coast Line Railroad Co., and Trailer Train Co.

Philip M. Lanier, Roy L. Sherman, Louisville, Ky., and David M. Keeble, Nashville, Tenn., for Louisville & Nashville Railroad Co.

W. F. Bunn, Chicago, Ill., and David M. Keeble, Nashville, Tenn., for Illinois Central Railroad Co.

Duncan Phillips, Washington, D. C., for Southern Ry. Co.

## MEMORANDUM

WILLIAM E. MILLER, Chief Judge.

On April 17, 1969, the United States of America filed a petition with this Court, requesting an order terminating the reorganization proceedings of the Tennessee Central Railway Company, Debtor, and permitting it to file a complaint for the appointment of a general equity receiver to liquidate the affairs of the Debtor.

Subsequent to this filing, objections to the government's petition were filed by the Chicago Freight Car Leasing Company, and jointly by eight carriers—the Louisville and Nashville Railroad Company, the Illinois Central Railroad Company, the Southern Railway Company, the Union Pacific Railroad Company, the Spokane International Railroad Company, the Penn Central Company, the Seaboard Coast Line Railroad Company, and the Trailer Train Company.

Following a hearing on May 9, 1969, the Court directed the parties who so desired to file briefs or memoranda setting forth their positions on the government's petition.

Upon consideration, the Court concludes that all necessary provisions of 11 U.S.C. § 205—the Railroad Reorganization Act—have been substantially complied with, and that the Court has jurisdiction to complete the liquidation of the Debtor's property.

On December 14, 1967, the Court placed the Tennessee Central Railway Company in reorganization under the terms of 11 U.S.C. § 205. A. Battle Rodes was appointed trustee of the Debtor, and is presently serving in that capacity. On April 25, 1968, the Interstate Commerce Commission, convinced that the Debtor was hopelessly insolvent, authorized abandonment by the company of its entire line of railroad in Tennessee and Kentucky. The Interstate Commerce Commission recognized at the time that the only hope for continued rail service to the area concerned was through purchase of the Debtor's line by one or more other rail carriers.

On August 31, 1968, the Debtor ceased all operations, and on September 2, 1968, the Louisville and Nashville Railroad Company, the Illinois Central Railroad Company, and the Southern Railroad Company began operating substantially all of Debtor's former lines under I.C.C. temporary certificates. The I.C.C. subsequently approved the sale of the Debtor's lines to the companies then . operating them, and on March 18, 19 and 20, 1969, by appropriate deeds and conveyances, there were transferred to the Illinois Central, the Louisville and Nashville, and the Harriman and Northeastern Railroad Companies (the latter the nominee of the Southern Railway Company) those portions of the Debtor's line whose sales had been approved by this Court and the I.C.C.

It was after these and other steps had been taken that the United States petitioned the Court for a termination of the reorganization proceedings, and for permission to file a complaint for the appointment of an equity receiver to liquidate the remaining assets of the Debtor.

■ The primary purpose of the Railroad Reorganization Act, approved as an amendment to the Bankruptcy Act in 1933, was to keep existing railroad lines in operation whenever possible. As the Court of Appeals noted in In re Chicago R. I. & P. Ry. Co., 72 F.2d 443, 450, 451 (7th Cir., 1934):

It required no investigation by Congress to show that the railroad companies occupied a distinct and unique position and were the legitimate subject of special provisions of the Bankruptcy Act. *The necessity of continuing the operation of the railroad,* the impracticability of liquidating its assets through the usual methods adopted in courts of bankruptcy, the futility of selling divisions or subdivisions of railroads or of rolling stock, etc.,—all unite to furnish

a basis in fact for a classification of debtors which singled out railroad corporations and provided specially and specifically for their administration by the Court. * * * Surely, we are justified in giving to the amendment [the Railroad Reorganization Act] a liberal construction, one that is consonant with the remedial purposes of this legislation. (Emphasis added).

If a reorganization petition is not filed in good faith, the statute provides that it should be dismissed by the Court [11 U.S.C. § 205(a)]. In this case the reorganization petition was approved by the Court as having been filed in good faith. No facts have been brought forth which demonstrate that this approval was wrong or that good faith is in any way lacking in the efforts that have been made to effect a reorganization.

The statute makes provision for the abandonment and sale of any or all of a Debtor's property, subject to I.C.C. approval, and authorizes disposition of the proceeds of sale, including discharge of any liens, as the judge shall by order direct. [11 U.S.C. § 205(o)]. Also, in the effectuation of any reorganization plan provision may be made for the sale of all or any part of the Debtor's property subject to or free from any liens. [11 U.S.C. § 205(b) (5)].

In Trustee's Petition No. 20, the Trustee stated that the disposition of Debtor's real estate remaining after sale of the operating lines to the three carriers, was necessary to complete a plan of reorganization:

> Through his efforts, the petitioner, in addition to maintaining essential rail service, has preserved and protected the property of the Debtor, has paid or provided for the payment of all equipment obligations of the Debtor,

has disposed of all the personal property of the Debtor to the advantage of the Debtor, and is now in the process of obtaining the necessary information to submit to the Court the completed plan of reorganization which would include the disposition of the valuable real estate of the Debtor.

The Trustee pointed out in a report filed June 9, 1969, that " * * * the purposes of Section 77 of the Federal Bankruptcy Act (Title 11, U.S.C. Section 205) have been accomplished to the extent that the railroad line of the Debtor has been retained as an operating railroad line. * * * "

It has been clear to all parties, almost from the very beginning of these proceedings, that it was practically impossible to continue the operation of the Tennessee Central Railway Company as a corporate entity. Virtually all of the Trustee's intensive efforts during the course of these reorganization proceedings have been directed toward an eventual sale of Debtor's line to one or more carriers who would continue to supply all, or substantially all, of the service previously supplied by Debtor.

■ Although no plan of reorganization *per se* has been presented to the Court, all of the underlying purposes of the Reorganization Act have been accomplished by the Court through the efforts of the Trustee. Once the good faith of a reorganization petition has been established to the Court's satisfaction, the Court is nevertheless authorized to dismiss the proceedings under certain conditions. Thus 11 U.S.C. § 205(g) provides:[1]

> If in the light of all the existing circumstances there is undue delay in a reasonably expeditious reorganization of the debtor, the judge, in his discretion, shall, on motion of any party in interest or on his own mo-

---

1. 11 U.S.C. § 205(e) also provides for dismissal by the Court of reorganization proceedings when the Judge has found defects in the plan, or the plan has not been approved by creditors holding at least two-thirds of the claims in each class. Such dismissal is discretionary. This provision is inapplicable since no reorganization plan as such has been filed.

tion, after hearing and after consideration of the recommendation of the Commission, dismiss the proceedings.

There has been no undue delay in the present reorganization proceedings or in the accomplishment of the essential purposes of the Reorganization Act. Compared with many such proceedings, the present case has proceeded with exceptional alacrity. For example, the reorganization of the Boston & Providence Railroad Corporation lasted for 28 years: In re Boston & Providence Railroad Corporation, 260 F.Supp. 415 (D. Mass., 1966).

The Trustee in this case in attempting a reorganization has at all times proceeded with diligence and dispatch. Within less than a year after the Debtor applied for reorganization, the Trustee had found purchasers who had agreed to operate virtually all of Debtor's line.

The government advances no compelling or persuasive reason for halting the reorganization proceedings. In contrast, appointment of an equity receiver would doubtless raise a number of complicated legal questions which could unnecessarily delay the ultimate distribution of Debtor's assets to those entitled.

In its brief the government cites several cases which it feels provide precedent for the Court to dismiss the reorganization proceedings. However, none is applicable to the questions involved in the Tennessee Central reorganization.

In Re Wyoming Ry. Co., 94 F.Supp. 371 (D.Wyo., 1950) involved a railway which had not been operating for more than three years at the time the case was decided. The only reorganization plan proposed—which had been filed by the line's sole owner—was turned down by the I.C.C. No effort was apparently made to keep the line in operation.

The Court stated: "While this Court by allowing this petition to be filed has held that it was filed in good faith, it is apparent now that it was a rather forlorn hope for reorganization and if it fails I see no reason why the Court should not hold it is virtually equivalent to an absence of good faith after so long a time of inactivity." Id. at 375. The Court consequently dismissed the reorganization proceeding.

Unlike the *Wyoming* case there has been no prolonged period of inactivity in the proceedings involving the Tennessee Central. On the contrary, the Trustee was constantly engaged in negotiations which culminated in the preservation of railroad service and the sale of a substantial part of the Debtor's assets.

In State of Tennessee, by Wolfenbarger, ex rel. Atchley v. Taylor, 169 F.2d 626 (6th Cir., 1948), the Court of Appeals held that the district court should have sustained various motions to dismiss the proceedings for lack of good faith. The owners of the Smoky Mountain Railroad, involved in the *Tennessee* case, had filed petitions with the I.C.C. on three different occasions to obtain authority to abandon the line. There was evidence that the line had been acquired by the current owners for the purposes of scrapping it. No one connected with the line had any intention of attempting to keep it in operation. The petition for reorganization was obviously filed in bad faith.

In Re Waco, Beaumont, Trinity & Sabine Ry. Co., 74 F.Supp. 691 (S.D. Texas, 1947), was a reorganization proceeding concerning a hopelessly insolvent railway with only nine of its 41 miles of line in operation. A large sum of money would have been necessary to restore the line to full operation, and the Court noted:

> Anyway, it is perfectly clear that whether the whole line or a part thereof is put in operation, it will take a large sum of fresh money, and none of the interested persons now before the Court have any money, nor do they bring forward any tangible plan for obtaining it, or show an effort to obtain it. Id. at 692.

The road had been in the hands of a receiver for 17 years at the time the case was decided.

Unlike the *Waco* case, a reorganization of the Tennessee Central's line has been effected through the sale of substantial portions of it to three other carriers. In the Waco case abandonment of the line and discontinuance of service appeared to be the only possible result of any proceeding.

■ In the present reorganization proceedings, substantial compliance with the statute has been obtained. As Mr. Justice Reed observed in his majority opinion in Ecker v. Western Pacific R. Corp., 318 U.S. 448, 481–482, 63 S.Ct. 692, 711, 87 L.Ed. 892 (1943): "Sound railroad reorganization involves more than the partitioning of assets among creditors * * *. The interest of the public in an adequate transportation service must receive consideration." While it is true that no actual plan of reorganization has been filed, the Trustee's sale of operating lines and other assets has accomplished the primary results envisaged by the statute—a continuation of railroad service to the public.

It will be a relatively simple matter for the Court to wind up the reorganization proceedings in this case. An appraiser has already been appointed to determine the value of remaining Tennessee Central property—all of it non-operating. Priorities of creditors will have to be determined, as in any reorganization case.

While the I.C.C. has stated in a letter that it has no objection to the termination of the reorganization proceedings,[2] it did not state that it had any objection to a continuation of the proceedings. Since all remaining properties are non-operating, it is possible that the I.C.C. may waive approval for their sale, thereby further expediting the conclusion of the reorganization.

■ Substantial compliance with the Railroad Reorganization Act having been

accomplished, no valid purpose would be served by approving the petition of the United States to dismiss these proceedings.

An order to implement this opinion has been passed to the Clerk on this date.

---

2. Reserving the right to set maximum limits of allowances for expenses and compensation for services by the trustee,

trustee's counsel and others, as provided in 11 U.S.C. § 205.