## In re KELLY–SPRINGFIELD TIRE CO.

District Court, D. Maryland.
March 2, 1935.

See, also, (D. C.) 10 F. Supp. 419.

Scott McLanahan and Franklin P. Ferguson, both of New York City, and Harry N. Baetjer, of Baltimore, Md. (Harry O. Levin, of Baltimore, Md., of counsel), for petitioner.

Walter T. Stern and Stanley Clarke, both of New York City, Eben J. D. Cross, of Baltimore, Md., and Edwin A. Falk, of New York City, for various parties.

Krause, Hirsch & Levin, of New York City, in opposition.

CHESNUT, District Judge.

Gentlemen, I shall be very happy to give you my views and ruling about this matter

that has been presented. I am exceedingly obliged to the numerous gentlemen, counsel and others who have attended this hearing and given the Court the benefit of their views about the affairs of the Kelly-Springfield Tire Company. The discussion has reached over a wider range of subjects than are really presented to the Court at this time.

The petition of the Kelly-Springfield Tire Company is filed under section 77B of the Bankruptcy Act (11 USCA § 207), and the duty of the Court on presentation of a petition of this kind is rather more limited than the range of discussion that has taken place with regard to it. The language of the act, subsection (a) of section 77B (11 USCA § 207 (a), provides that upon the filing of such a petition the Judge shall enter an order either approving it as properly filed under this section if satisfied that such petition or answer complies with this section and has been filed in good faith, or dismissing it.

Now, that is the sole question that is before the Court at this time and one or the other of the alternatives must be adopted. It must either be approved or it must be dismissed, and I understand the clear indications of this section are that if the Judge is satisfied that such petition complies with this section and has been filed in good faith, then it should be approved.

It seems to me there are three questions that are relevant to the consideration of whether it should be approved or dismissed. To comply with the section, it must be filed in good faith. And the three questions that are raised, it seems to me are, first, the jurisdiction of the Court with respect both to subject matter and also, subordinately, with respect to venue; then on the merits of the face of the petition whether it seems to be filed in good faith; and if in compliance with the section on other matters of substance.

As to the jurisdiction in the sense of venue, that is to say the proper district court in which such a petition may be filed, the language of subsection (a) of section 77B (11 USCA § 207 (a) is that, "The petition shall be filed with the court in whose territorial jurisdiction the corporation, during the preceding six months or the greater portion thereof, has had its principal place of business or its principal assets, or in any territorial jurisdiction in the State in which it was incorporated."

Now, this particular corporation was formed under the laws of New Jersey. It has a manufacturing plant in Cumberland, Maryland, where it employs over a thousand employes, and the papers indicate that the plant originally cost $16,000,000, and has been written down on the books now to about $6,000,000. The corporation also has had a place of business in New York, which it is suggested is its principal place of business, so that it is obvious that any one of three districts of the United States might have been invoked in the filing of the petition, either in New York, in New Jersey or in Maryland. However, the petition which is before me has, in fact, been filed here, and I do not know that I am concerned at this time with the question as to why it was filed here. So far as jurisdiction is concerned in the sense of venue, Maryland is one of the districts in which it might be filed under the Statute, and it has been filed here. Therefore, this Court has jurisdiction in the sense of venue, because I take it there really is no controversy under the allegations of the petition and indeed under what I understand to be the facts that are practically conceded by all interests, that the principal assets of the corporation are here in Maryland.

I have listened with interest to the suggestion in argument of counsel who took some exception to the fact, on the factual ground, but I have not been impressed by it. I think it very clearly appears from this petition that the principal assets of the Kelly-Springfield Tire Company are in the State of Maryland.

For what it may be worth, I may also say that I have long been impressed, in professional practice, as well as on the Bench, with the consideration that a corporation has its principal habitat, outside of technical provisions of the law, in the place where it has its plant, and I do not think that it can be seriously debated that where a corporation has a thousand employes, a plant costing millions of dollars, and has always had its plant in a particular state, it is in economic and financial substance, and in the language of business, the corporation of that state.

We know, of course, with the facilities existing now of incorporating in any one of the forty-eight states of the Union, many corporations for the purpose of taxation, or because solicited or advised by lawyers, go outside of their real homestead to become incorporated. Whether that is a for-

tunate or unfortunate practice, we need not stop to consider here. Many people call such corporations "tramp" corporations. I would not suggest that is true with regard to this corporation. No doubt it was formed in New Jersey for very good reasons at the time, and it was entitled to have its home in Maryland, it selected Maryland as its place of manufacture, and it has clearly, I think, under the language of the petition, its principal assets in the State of Maryland. So I have no hesitation whatever in finding that there is jurisdiction here in the venue sense.

█ The next question is whether the petition is filed in good faith, and I have been at some pains to inquire whether the action of the Executive Committee of the Corporation in filing this petition here can be properly taken as the authorized action of the Corporation as such. It is by no means unusual in corporate affairs, in the management of corporate business, for the Executive Committee to act for the whole Board of Directors, and in matters of this kind, where decisions have sometimes to be reached promptly with regard to litigation, especially when the affairs of the Company are in more or less of a complicated legal situation, it is not surprising to me that the Executive Committee should have undertaken to act for the Board of Directors.

If it had been brought to my attention in any formal way, on which I could have based a conclusion that the Executive Committee did not fairly at the present time legally represent the Corporation, I would have regarded that as unquestionably bearing on the validity of the filing of the petition and the selection of venue; but I find nothing on the face of the paper, nothing has been brought to my attention by the numerous gentlemen who have expressed their views, to convince me, or to give me any reasonable doubt, that prima facie the Executive Committee at least was authorized legally to act for the Corporation.

So that I do not understand how it can properly be suggested at this stage of the proceedings, at least, that it was not filed in good faith. There has been indeed a very definite suggestion in argument that the Court might find that this petition is not filed in good faith, but the basis of that argument would seem to me, when it had been explored by questioning from the Bench, to come to this, that there is dissension among the stockholders of the Com-

pany, that a certain proportion of the stockholders are still sympathetic with the present management, that is to say the present Board of Directors, and a very large number of stockholders are entirely out of sympathy with them.

The contention that has been made here so forcibly this morning that if this Company is to be administered under section 77B, it would be better to have it in New York than Maryland, seems to me to be predicated on the assumption that the stockholders who are not in agreement with the present officers have the idea that in some way they would dominate the management of the Company if the affairs were administered under section 77B in New York, and that they would not have equal opportunity to be heard in the administration of the affairs of the Company if they were administered in Maryland. And, conversely, that because the present management has filed proceedings here in Maryland that it thereby will have some dominant relation to the administration of the Company for the temporary time that it is under the jurisdiction of the Court. Neither assumption, it seems to me, has any foundation. Wherever the affairs of this Company are administered they will be administered by some federal judge for the benefit of all interests, having in mind, of course, the priority of claims of the respective interests or classes. Every federal court under section 77B looks primarily to the interest of the creditors, next to the interest of the senior ranking stock, and next to the interest of the junior ranking stock. And wherever administration is under section 77B it is for the best interests of all concerned, according to their respective rights and priorities.

So it seems to me that the suggestion that the present management in coming to Maryland is not acting in good faith is based on quite an insecure legal foundation. At all events, I find nothing which would justify me in determining at the present time that this proceeding has not been filed in good faith.

█ I have noted some discussion in some of the cases that have dealt with the subject matter as to whether a petition which is filed without a fairly well formulated legal plan can be said to be filed in good faith. Without speaking with great exactness, I think it has been ruled recently in the Second Circuit that that is too narrow a view to take of the meaning of good faith,

and if the petition is filed with the expectation that a plan can be formulated and will be formulated promptly, then the mere fact the plan has not been formulated when the petition is filed does not constitute a lack of good faith. And with that view of the matter, I am very cordially in accord.

■ Now, the next question in the case, and perhaps the important one, is whether the subject matter, that is the financial situation of the Company, is such as to meet the requirements of the statute. The statute gives its protection to a corporation only on the ground that it is insolvent or is unable to pay its debts. The great purpose of the statute is to prevent a sinking corporation from drowning. And it is with that idea that the courts of the United States are instructed to lend their aid to save a financially drowning corporation. If they are dead, then, of course, there is only bankruptcy for them. But while there is life there is always hope, financially as well as physically. So that I do not think it is necessary that a corporation should have no hope whatever of successful financial rehabilitation in order to justify its coming into court. It is an old saying in the law that an ounce of prevention is worth a pound of cure, and I think that was the underlying thought of Congress in passing this legislation—it was to be of help to corporations and endeavor to rehabilitate them, having in mind that the best interests of their creditors lie along that line. Every one knows, of course, that every modern industrial enterprise of any size is of value only as a going concern. Bricks, mortar and machinery are a liability and not an asset unless they can be made productive, productive for the benefit of their wage employes, for the members of society in the community, to keep them off Relief rolls, and productive for the benefit of the proprietors of the business and for the purpose of paying interest on the organization's obligations. So it is very, very clear that in applying the substance or intention of this Act we do not have to wait until a corporation is absolutely insolvent.

■ Now, I think that spirit applied to the facts of the case make in substance a case where the aid of the Court ought to be given. I have had some question originally about that in this case. We have a somewhat unusual financial situation. We have very large and valuable fixed assets. We also have apparently, on the face of things, enough ready money to carry on the affairs of this corporation and to keep the sheriff from its doors for a time. But the picture that is painted by the petition is one which has been very excellently described, I think, by one of the filing counsel this morning, namely, that while it can probably run for two or three months without some assistance from the Court, it very evidently will have to close down in a comparatively short time unless something is done to help the situation. I think it would be taking an entirely too narrow a view of the intended help to be gotten from the federal courts to say that it is too early to apply under the conditions described in the petition. Indeed, I understand that all interests represented here this morning are agreed that it is desirable and even necessary that some court should assume jurisdiction over the affairs of this Company under section 77B. So the three questions that presented themselves to me in considering whether I should approve the petition or dismiss it seem to all lead to the affirmative conclusion that I should approve it.

I will say just a word more with regard to what seems to me the principal controversy in the minds of those parties who have advanced some different views here this morning, and that is with regard to the venue. The Act provides further on that that the court shall upon petition transfer such proceedings to the territorial jurisdiction where the interests of all parties will be best subserved. As a matter of procedure it would seem that that sentence in the law could not be called into play until after the Court had approved the petition. But as it may hereafter arise, I have been very glad to have the opportunity to get the views of different counsel on what would be the venue most in the interest of all the parties, and where they would be best subserved. Naturally I do not intend to express any final views about that in advance of the question being presented in proper form.

■ It was, however, urged upon me that as a condition to the approval of the petition it ought not to be approved if it could clearly be seen that it subsequently should be transferred to New York. The law requires that the petition shall state what other proceedings under section 77B have been filed and are pending. It appears from the petition that a creditors' petition, filed by three separate creditors each holding a

$1000 bond, a few days ago was filed in the Southern District of New York. And it was urged upon me that this petition should not be approved here and in due course matters should be left for the action of the New York Court.

Now, undoubtedly there are considerations both ways as to where the convenience of all parties would be best subserved, whether in New York or in Maryland. As I say, I do not feel called upon to make any final ruling on that at this time, except to say that I think the arguments that have been made in favor of the convenience and desirability of administration in Maryland, at least are sufficiently weighty to preclude the necessity of concluding that it clearly would be better to have it in New York. In any event, I feel bound by virtue of the very recent decision of Hamilton Gas Company v. Watters Case, 75 F.(2d) 176, by the Circuit Court of Appeals of this Circuit, decided January 9, 1935, with a very extended and fully reasoned opinion by Judge Soper, speaking for the Court, on a matter which was novel, in which it was concluded, there being three different places at least where the petition might be filed, a possibility under the law of filing by creditors and by the corporation separately, that preference should be given to the action of the corporation. And that was applied in a situation where the creditors' petition was first filed in West Virginia, and the debtor corporation's petition subsequently filed in New York, and the Circuit Court of Appeals reached the conclusion in that case that the preference should be given to the New York venue.

Now, conversely, that principle requires, it seems to me, that consideration be given to the preference of the company here to have the venue in Maryland. So that even if I had a different view at the present time, I should still think I would be required at this stage of the proceedings to apply the decision of the Circuit Court of Appeals.

 As bearing on that, I find what seems to me to be the majority view, as to the several classes of interests, is quite definitely in favor of the Maryland venue, at least at this time. Several classes of the parties who are interested are the bondholders, there being outstanding $2,611,500 of bonds; secondly, the preferred stock of an aggregate par value of $5,109,500, and common stock of a par value of $3,731,030.

Now, there are represented here this morning a substantial majority of the bondholders, and they have expressed a preference for the administration here in Maryland. About twenty-five per cent of the preferred stock has also expressed that preference. But there is represented a committee which, I understand, is authorized by proxies to speak for something over fifty per cent, around fifty-four per cent, of all stock, preferred and common, which is very definitely of the view that it would be most convenient to have the administration in New York. Of course, I think it is obvious if preference is to be given to any class that preference should be given to the bondholders rather than to the common stock holders. The preferred stock is somewhat divided in the matter. In considering the easy administration of financing the corporation in the best interests of the parties, of course consideration ought to be given to the practical working of the corporation.

It has been suggested with force that the executive business of this corporation has been carried on heretofore in New York, with its offices there, large office space costing about $12,000 a year. It was, however, also brought to my attention that some time ago, and prior to this proceeding, it had been determined by the then management of the Company, the receivers, that it would be a wise and economical thing to move the offices of the corporation to Cumberland, where there is adequate office space in the plant without extra cost.

However that may be, the business of this Company consists of manufacturing and of selling. It does seem to me the manufacturing end is very much more important than the selling end. Perhaps, I do not mean it quite that way. I would not indicate that selling is not of vital importance to the Company. But as the sales and distribution of the corporation's assets, its commodity, tires, are nation-wide, and the sales are actually ultimately to the public by some two thousand separate dealers distributed over the United States, it is quite obvious that the amount of sales, whether actually executed in New York, are not of themselves a controlling element. It is really a matter of convenience, where it is most convenient to have the executive selling force. I do not know of any reason other than the opinion of proper persons, whether that should be in New York

or Baltimore or, for that matter, in Cumberland. It may be, however, that fuller information on that point may change my views about the importance of the change of the selling office. As a matter of fact, I understand the selling is done through a subordinate corporation the stock of which is owned by the parent company with which we are dealing.

Now I have been impressed with the real, economic and financial importance of trying to do something for this Company in court. If there ever was a picture of a corporation which needed centralization of authority it is this. Here you have a nation-wide business, with practically a nation-wide distribution, and you have three separate receiverships at the present time, one in New Jersey, one in New York and one in Maryland, with application for the appointment of other receivers in this Court on the equity side. Now, I do not doubt that those receivers in the several jurisdictions—and I understand there are six different individuals, some appointed in one jurisdiction, some in another and some in another—have done the very best they could to harmonize and unify the activities of the Corporation. But it is obviously impossible that that could be done in any effective way with a triple-headed management with three separate receiverships. It is absolutely quite necessary there should be some centralized unified management of the affairs of this Company. And that is one of the considerations which has persuaded me that in substance the requirements of the statute with regard to need for help are met by the situation disclosed by the petition.

I do not know whether anybody has prepared any order to be signed. Of course, the formal order should be the conventional one with regard to the appointment of a trustee or trustees temporarily, with provision for notice to all interests in the Company in thirty days, whether the appointment should be made permanent or whether it should be changed in any way. And, of course, careful consideration will have to be given to the selection of the trustee or trustees. I do not feel at the present time that I really am sufficiently informed about that aspect of the matter. I have the greatest desire to select as trustees of this Company people who are competent to run the business in a supervisory way and who will be, as far as possible, agreeable to and sympathetic with all interests. I will be very glad to have suggestions from all interests that are represented here today as to who these temporary trustees should be.