In the Matter of SOUTHWEST ENTERPRISES, INC., Tex-Iron, Inc., and Ore Processing Company, Inc.

No. 691.

United States District Court
W. D. Arkansas,
El Dorado Division.

Dec. 21, 1966.
As Corrected Jan. 9, 1967.

Arnold & Hamilton, Crossett, Ark., for petitioners.

Leon Catlett, Little Rock, Ark., Keith Clegg & Eckert, Magnolia, Ark., E. P. Russell, Memphis, Tenn., for First National Bank of Magnolia and Union Planters.

## MEMORANDUM OPINION

OREN HARRIS, District Judge.

This is an action in which the petitioning corporations, Southwest Enterprises, Inc., Tex-Iron, Inc., and Ore Processing Company, Inc., filed their petition for reorganization under Chapter X of the Bankruptcy Act. They are corporations organized under and by virtue of the laws of the State of Arkansas, with their principal place of business at Magnolia, Arkansas.

The three corporations through their principal officers allege that they and each of them are unable to pay their debts as they mature but with the aid of the court's injunctive power a plan of reorganization could be formulated whereby financing could be arranged and the assets of the debtor corporations could be sold upon such terms as would provide funds for the satisfaction of the claims of all creditors secured and unsecured.

It is further stated that on or about June 2, 1965, a decree was entered by the Chancery Court of Lafayette County, Arkansas, for judgment in the sum of $512,900, and foreclosing the lien of First National Bank of Magnolia, Arkansas, on certain property and stocks described in the petition; that notice of sale at foreclosure was published in the Lafayette County Democrat setting the date of the sale for August 16, 1966, at which

time virtually all of the assets of Southwest Enterprises, Inc., and Ore Processing Company, Inc., were to be sold pursuant to the provisions of the foreclosure decree and consent agreement.

On August 10, 1966, the petitioning corporations applied ex parte for an injunction restraining the First National Bank of Magnolia, Magnolia, Arkansas, from proceeding with its scheduled foreclosure sale and, in addition, prohibiting the sale or transfer of stock in any of the debtor corporations as well as the institution of or prosecution of any suits at law or proceedings in equity against the stockholders.

The Court entered an Order enjoining the First National Bank of Magnolia, Magnolia, Arkansas, and set the matter for preliminary hearing on August 19th, at which time objections of the First National Bank of Magnolia and Union Planters National Bank of Memphis were filed and entered. The Union Planters National Bank of Memphis held a $400,-000 participation in a half million dollar secured obligation by note of Southwest Enterprises, Inc., and Ore Processing Company, Inc. The security for this note was virtually all of the assets of Southwest Enterprises, Inc., and Ore Processing Company, Inc., together with the capital stock of each of the three corporations.

The objections to the petition stated in substance that it fails to set out a plan of reorganization as required by Chapter X; that there was no reasonable expectation that reorganization could be effectuated; and that the petition was not filed in good faith, but rather for purposes of hindering and delaying the secured creditors.

At the preliminary hearing on August 19, 1966, the objections of the two secured banks were set for hearing on September 21, 1966, and the Court, with the consent of the parties, ordered that pending the September 21st setting, the three corporations would be allowed to pay only such bills as were necessary for their operation, payments to be made from funds of Tex-Iron, Inc.

Thereafter, additional objections were filed by the First National Bank of Magnolia and the Union Planters National Bank of Memphis, attacking the jurisdiction of the Court with respect to Tex-Iron, Inc., on the basis that this corporation's entire operation was located in Cushing, Texas, and therefore without the jurisdiction of the Court. These objections also averred that Tex-Iron, Inc., was neither insolvent nor unable to pay its debts as they mature, and was, therefore, not a proper candidate for reorganization under Chapter X and that its inclusion in the petition was evidence of bad faith.

The objecting banks further stated that Southwest Enterprises, Inc., and Ore Processing Company, Inc., were hopelessly insolvent and that the income and assets of Tex-Iron, Inc., were being depleted because Tex-Iron, Inc., was paying all of the operational expenses of Southwest Enterprises, Inc., and Ore Processing Company, Inc. This, it was alleged, was resulting in a serious depletion in the collateral value of Tex-Iron, Inc.

The objecting banks also claimed that the petition was filed and injunction sought at the last possible moment, with the result that the foreclosing banks were denied a hearing prior to the scheduled sale although the petitioning corporations knew two or three weeks prior to filing their petition for reorganization that the sale was scheduled for August 16, 1966.

Thereafter, on September 8, 1966, the objecting banks urged the Court to modify its injunction of August 10th, thus allowing institution and prosecution of suits against stockholders and foreclosure of the capital stock of the three corporations. This motion was denied.

The matter came on for hearing on September 21, 1966, upon the pleadings, testimony of witnesses, exhibits, documents and arguments of counsel, from which the Court finds:

Each of the three petitioning corporations were organized for a specific purpose. Although they were organized

principally by the same parties they are separate and distinct corporate entities and particularly so with respect to Tex-Iron, Inc. Southwest Enterprises, Inc., obtained mineral leases for the production of iron ore in Arkansas, and Ore Processing Company, Inc., established an operational plant for the purpose of refining the ore. Tex-Iron, Inc., owns mineral leases and operates a plant for refining the ore in Texas.

■ From the financial statements of Tex-Iron, Inc., presented in evidence at the hearing it is apparent that Tex-Iron, Inc., is neither insolvent nor unable to pay its debts as they mature. It is stated in the petition for reorganization (page 5, paragraph 13) that "Tex-Iron, Inc., is operating at a considerable net profit each month". The evidence clearly establishes that Tex-Iron, Inc., is operating as a perfectly healthy, solvent and fairly prosperous corporation and it, therefore, cannot be considered a proper subject for reorganization under Chapter X.

■ A corporation, in order to qualify under Chapter X, must be eligible for ordinary bankruptcy and for this purpose the corporation must be insolvent. Since Tex-Iron, Inc., is solvent as established by the evidence and is not only making a profit and paying its own debts but supporting Southwest Enterprises, Inc., and Ore Processing Company, Inc., both of whom are insolvent, it does not qualify for reorganization under Chapter X. (11 U.S.C.A. § 530; Remington on Bankruptcy, § 4416, § 4431, § 4461, § 4475.1)

Neither Southwest Enterprises, Inc., nor Ore Processing Company, Inc., are entitled to reorganization under Chapter X for the reason that the petition was not filed in good faith under the Act. (11 U.S.C.A. § 501, et seq.)

The Eighth Circuit Court of Appeals decision in the case of First National Bank of Wellston v. Conway Road Estate Company, 94 F.2d 736 (1938), is conclusive on this question. This Circuit's Court of Appeals stated:

"We, therefore turn to an examination of the circumstances which control the discretion of the District Court with respect to the right of the debtor to enjoin the foreclosure sale *and the correlative right of the appellant to freedom from restraint.* It has been the rule in equity receivership cases that the bill must be dismissed for want of equity if it is not filed in good faith as, for example, when its purpose is to hinder or delay creditors. * * * Under section 77B(a) of the Bankruptcy Act the District Judge must dismiss the entire proceedings when want of good faith on the part of the debtor appears. * * *

"In a reorganization proceeding under section 77B good faith means more than honesty of purpose. It also requires that there be a reasonable possibility of successful reorganization. * * *

"Whenever want of good faith appears the debtor's petition should be dismissed *even though a plan or reorganization has not been submitted.*"

In Brockett v. Winkle Terra Cotta Co., 81 F.2d 949, 953 (8th Circuit) (1936), Judge Van Valkenburgh, speaking for the Court in reference to 77B, quoted from In re Sefton National Fibre Can Co., D.C., 13 F.Supp. 83 (1935), as follows:

"The outstanding purpose of the Amended Act, upon which this case rests, was to afford aid in the effort to rehabilitate corporations solvent in fact but unable to meet maturing obligations."

and then Judge Van Valkenburgh stated:

"It was not the purpose to lend its aid generally and without discrimination to corporations hopelessly insolvent, and without legal resources to prosecute their business with reasonable prospect of success."

The Amendatory Act of 1938 (Chandler Act) removed the corporate reorgan-

ization provisions from Section 77B and incorporated them with extensive revisions and operations as Chapter X of the Bankruptcy Act (11 U.S.C.A. § 501 et seq.). Thus the familiar expression "77B proceedings" gave way to Chapter X proceedings which may effect the rights of all creditors secured and unsecured. 9 Am.Jur.2d Bankruptcy § 1493.

In considering the revised act and the decisions relating thereto, it is apparent that the District Court has a duty to bear in mind the purpose and function of the Act at every step of the proceeding and whenever it appears impractical or that injunctive relief is not sought in good faith as provided in the Act (11 U.S.C.A. § 546), the court, in the exercise of sound discretion, should refuse the debtor further aid and deny the petition.

An examination of the financial statements of Southwest Enterprises, Inc., and Ore Processing Company, Inc., attached as exhibits to the petition reveal that neither corporation produced any income for the year ending April 30, 1966.

Southwest Enterprises, Inc., owned mineral leases and Ore Processing Company, Inc., a plant for refining the ore. This plant has not been operational since 1963.

In fact, these corporations have not made a profit in three years and have no going concern value to be protected. Both profit and going concern value are necessary for a corporation seeking reorganization. Remington on Bankruptcy § 4460, Brockett v. Winkle Terra Cotta Co., supra. The evidence shows that hundreds of thousands of dollars would be required to modify and reactivate this plant for production. With no income, with all assets pledged against secured debts, now in default since September of 1965, and with current liabilities in excess of $1,200,000 it is unreasonable to expect that a plan of reorganization could be effected, as the financial condition of these two corporations is hopeless and rehabilitation is not only impractical, but impossible.

Title 11, U.S.C.A. § 546 provides in substance that if it is unreasonable to expect that a plan of reorganization can be effected, a petition filed should be deemed not filed in good faith.

The hopeless condition of Southwest Enterprises, Inc., and Ore Processing Company, Inc., is further supported by the proof that Southwest Enterprises, Inc., in 1964 lost $105,518.72, in 1965 lost $108,082.19, and in 1966 lost $70,675.17, or a total loss of $284,276.08. During these same years, Ore Processing Company, Inc., lost $71,853.50, $88,100.33 and $55,086.51, for a total loss of $215,040.34. The combined loss of both Southwest Enterprises, Inc., and Ore Processing Company, Inc., for the three years was $499,316.42. These losses, in the opinion of the Court, clearly establish the fact that both corporations are hopelessly insolvent, and are ineligible for Chapter X proceedings.

The futility of an attempted reorganization is further emphasized by the testimony of the accountants who appeared as witnesses at the time of the hearing. From this testimony it was apparent that the actual assets of Southwest Enterprises, Inc., and Ore Processing Company, Inc., were approximately $543,349.17, while their total liabilities exceed $1,000,000. It is apparent that these assets are insufficient to pay the secured creditors principal and accrued interest.

Corporate reorganization under Chapter X provides for the submission of the plan of reorganization which requires acceptance by creditors holding two-thirds in the amount of claims of each class (11 U.S.C.A. § 579). The First National Bank of Magnolia and the Union Planters National Bank of Memphis, holders of virtually all of the secured debts of the petitioning corporations and more than half of the total indebtedness, have expressed their objection to any plan that would not provide for immediate payment of the full past due indebtedness to them. The debtors were made aware of this objection by the creditor banks prior to the filing of the petition

for reorganization. The objecting banks have restated their objection to any plan that would not provide for immediate payment of the full indebtedness to them in their pleadings filed in this proceeding.

Since it is apparent that the petitioning corporations are unable to pay the indebtedness to the objecting banks and the banks hold more than half of the total indebtedness of the corporations, it follows that no plan under the circumstances could gain acceptance by creditors holding two-thirds in the amount of claims of each class.

■ Although announced objection by secured creditors is not in itself determinative of the question of good faith filing of the petition, York v. Florida Southern Corporation, 310 F.2d 109, (5 Cir. 1962); Corr v. Flora Sun Corporation, 317 F.2d 708 (5 Cir. 1963), such objection is a factor to be weighed unless it is clear that the objecting creditors would not be effected by the plan. Janaf Shopping Center, Inc. v. Chase Manhattan Bank, 282 F.2d 211 (4 Cir. 1960).

In this proceeding the objecting creditors would clearly be effected since nothing short of liquidation could provide immediate payment of their debts or any substantial part thereof.

■■ It is a well accepted rule that reorganization and not liquidation is the purpose of Chapter X. Graphically expressed the purpose of the reorganization provisions (Chap. X) is to prevent a sinking corporation from drowning. It was not, however, the purpose of Congress to "place crutches under corporate cripples, fit subjects for liquidation, and send them out to be a menace to all who might purchase their securities or *deal with them on credit*". 9 Am.Jur.2d § 1496.

In dismissing the petition of Southwest Enterprises, Inc., Ore Processing Company, Inc., and Tex-Iron, Inc., this Court finds ample support in the decisions of the Eighth Circuit Court of Appeals, First National Bank of Wellston

v. Conway Road Estates Company, 94 F. 2d 736 (1938), and Tennessee Publishing Company v. American National Bank et al., 81 F.2d 463 (6 Cir. 1936), in which the Court said, inter alia, applicable in this proceeding:

"The purpose of the statute is to relieve distressed debtor corporations and to provide the mechanics for reorganization where reasonable expectation of continued useful existence may be fairly entertained. This being so, something more must be demonstrated by the debtor than mere honesty or sincerity of purpose. If not, then the way is open to the exploitation of every involved corporation by visionaries whose illusionary and optimistic imaginations outrun their business judgments, and the interest of every legitimate creditor is at the mercy of debtors whose sole hope of financial salvation is an abiding faith in miracles."

It follows that the petition of Southwest Enterprises, Inc., Ore Processing Company, Inc., and Tex-Iron, Inc., should be dismissed and the injunction dissolved.