In the Matter of U. S. A. MOTEL COR-
PORATION, a California corporation,
Debtor.

CARUSO ENTERPRISES, INC., et al.,
Appellants,

v.

U. S. A. MOTEL CORPORATION, a
California corporation, Curtis B.
Danning, Trustee, Appellees.

Nos. 24074, 24075.

United States Court of Appeals,
Ninth Circuit.

Oct. 21, 1971.

George Treister (argued), Bruce H. Spector, of Quittner, Stutman, Treister & Glatt, Sulmeyer, Kupetz & Alberts, Stephen P. Feldman, Los Angeles, Cal., for appellees.

Nathan Markowitz (argued), of Gendel, Raskoff, Shapiro & Quittner, Robert W. Driscoll, Los Angeles, Cal., for appellants.

Before ELY, CARTER and TRASK, Circuit Judges.

ELY, Circuit Judge:

U.S.A. Motel Corporation (hereinafter USA) petitioned for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501–676. USA's petition was approved, a trustee and a special master were appointed, and a hearing date was set. 11 U.S.C. §§ 517, 541, 556, 561. Two stockholders of USA, Henry Caruso and Caruso Enterprises, Incorporated (hereinafter CEI), filed two pleadings controverting the allegations of USA's petition and urging dismissal of the Chapter X proceedings.[1] After USA responded to these pleadings, hearings were held before the special master, who sustained the Chapter X petition. CEI and Caruso objected to the special master's report and recommendations, but after a brief hearing, the district judge confirmed the report, overruled the objections, and adopted the

---

1. On March 18, 1968, Day & Brown Insurance Company, a creditor, and Joseph Guccione, a stockholder, were granted leave to intervene. They are represented by the same counsel as are Caruso and CEI.

special master's Findings of Fact an.. Conclusions of Law. Caruso, CEI, and the intervenors appeal.

### Factual Background

USA's principal asset is a twenty-one room motel. It also has a 25% interest in a joint venture, the Gaslight Venture, which owns a parcel of real estate. USA has some 501 stockholders, with 20% of its stock being publicly held. The decision to file the Chapter X petition stemmed principally from an apparent dispute between Caruso and USA's president, one Fallon. This dispute arose partially from a repudiation by Caruso of partnership with Fallon in another enterprise which was a debtor in a separate Chapter X proceeding. Fallon asserts that Caruso was bleeding USA by forcing it to invest substantially in the Gaslight Venture, of which CEI owns 75%. Caruso claims that Fallon's objective was to liquidate USA under Chapter X by placing USA's real property in a block with three pieces of adjoining property, which are also involved in Chapter X proceedings.

On the morning of January 8, 1968, USA's Board of Directors, consisting of president Fallon, secretary Manion, and treasurer Merwin, met to discuss the corporation's financial condition. Although Caruso and a Mr. Leavy, attorney for Merwin, Caruso, and CEI, were not invited to do so, they also attended the meeting. Fallon had orally requested Merwin to bring the corporation's books and records to the meeting, but Merwin, claiming that he feared a disruption of the corporation's business, failed to comply with the request. Fallon and Manion voted to adjourn and reconvene that afternoon at Fallon's home because, according to them, attorney Leavy and Caruso were interfering with the meeting. Fallon asked Merwin to bring the books to the afternoon meeting, but Merwin stated that he could not attend. At the reconvened meeting, Fallon and Manion, as two-thirds of the Board of Directors, voted to remove Merwin as treasurer and to file the

Chapter X petition. The petition was filed later in the day. Appellants Caruso and CEI, together with two intervenors, Day and Brown Insurance Company and Mr. Guccione, now question (1) the validity of the corporate resolution authorizing the Chapter X filing, (2) the finding that on January 8, 1968, USA was insolvent or unable to pay its debts as they matured, (3) the finding that the Chapter X proceeding was filed in "good faith," and (4) the district judge's fulfillment of the role required of him in a Chapter X controversy.

### Insolvency

■ An essential allegation of every Chapter X petition is, of course, that "the corporation is insolvent or unable to pay its debts as they mature." 11 U. S.C. § 530(1). If the petition is challenged, the burden rests upon the petitioner to prove this and all other material allegations of the petition. Marine Harbor Properties, Inc. v. Manufacturer's Trust Co., 317 U.S. 78, 85, 63 S.Ct. 93, 87 L.Ed. 64 (1942); 6 Collier on Bankruptcy ¶ 6.05, at 1014 (14th ed. 1969) (hereinafter Collier). USA alleged insolvency and inability to pay its debts as they matured, and the special master found that on January 8, 1968:

(1) The fair market value of USA's motel property was $467,000.

(2) USA owed undisputed unsecured obligations of approximately $1300.

(3) There was a statement from a law firm for $11,408.83 which was addressed to and owing jointly and severally by CEI, Caruso, and USA, which was not carried on USA's books, and which Caruso had agreed to satisfy.

(4) A first deed of trust on the motel property secured an obligation to the City National Bank in the amount of $171,000.

(5) The bank had offered on January 8, 1968, to Caruso, on behalf of the principal stockholders of the corporation, to extend the note for one year under the same terms and conditions, but Fallon and Manion were unaware of this. The

bank would renew the note only if the Chapter X proceeding were dismissed.

(6) A second deed of trust, evidencing an obligation of $70,000 in favor of the Roxbury Fund had not yet matured, was current, and was guaranteed by Caruso.

(7) The book net worth of USA as of December 31, 1967, was $220,240.20.

(8) The book net profit of USA from May 1, 1967, to December 31, 1967, was $13,962.17, without reference to a probable estimated loss of $11,751.00.

(9) "The Debtor was * * * able to meet its unsecured obligations as they mature[d], and the Debtor was not * * * insolvent, but two Directors, Manon Manion and James L. Fallon, were not aware of this fact."

(10) "Debtor corporation was not able to meet its operating expenses and its unsecured obligations, including the * * * [legal] bill, as they matured, the payment[s] on the first deed of trust as extended for an additional year, as they matured, and the second deed of trust payments as they matured."

 Section 1(19) of the Bankruptcy Act defines insolvency: "A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property * * * shall not at a fair valuation be sufficient in amount to pay his debts." 11 U.S.C. § 1(19). This definition is applicable to Chapter X. Meyer v. Dolan, 145 F.2d 880 (2d Cir. 1944), cert. denied, 324 U.S. 867, 65 S.Ct. 916, 89 L.Ed. 1422 (1945). Clearly the special master's finding that USA was not insolvent and that USA enjoyed a book net worth of some $220,000 negates any possibility that USA was insolvent in the bankruptcy sense. Thus, the question is confined to whether USA was insolvent in the equity sense, i. e., that it could not pay its debts as they matured.[2]

 As we have previously noted, the master found that on January 8, 1968, USA could meet its unsecured obligations and was not insolvent, but that two directors were unaware of this. This lack of knowledge by the corporate directors at the time the petition was filed is relevant to the issue of good faith, but it has no bearing on the issue of equity solvency resolved at the later hearing. In his Finding XI, the master determined that on January 8, 1968, USA could not meet its operating expenses, its unsecured obligations, including the legal bill which he had found was guaranteed by Caruso,[3] its payment on the

2. USA claims that the question of insolvency and inability to pay debts as they mature, along with other issues, is not properly before this court. Section 137 of Chapter X permits "an answer controverting the allegations of the petition" to be filed before the section 161 hearing "by any creditor or indenture trustee or, if the debtor is not insolvent, by any stockholder of the debtor." 11 U.S.C. § 537. Caruso and CEI, both stockholders, were the only challengers who filed an answer controverting the petition prior to the section 161 hearing. Relying on In re Hudson & Manhattan R. R. Co., 138 F. Supp. 195, 200 (S.D.N.Y.1955), USA argues that since its petition alleged both insolvency and inability to meet its debts as they matured and was approved, then stockholders could not answer and challenge insolvency without first seeking a preliminary hearing to establish the right to answer. Thus, it is asserted that the Congressional scheme is that when the debtor's petition states that it is insolvent, stockholders cannot question that which is alleged in the petition without first having a preliminary hearing. We reject this argument primarily because it is first offered here at the appellate level. Since USA failed to raise its objection to CEI's and Caruso's answer controverting the petition at its earliest opportunity, it cannot now object to the court's allowance of the answer. Saros v. Richardson, 435 F.2d 821 (9th Cir. 1971); Fed. R.Civ.P. 46. Additionally, we find no support for the preliminary hearing procedure, as suggested by USA and the *Hudson* court, in either the general provisions of Chapter X, the General Orders in Bankruptcy, or Second Circuit decisions. *See* In re Hudson & Manhattan R. R. Co., 229 F.2d 616 (2d Cir. 1956).

3. The legal bill would also seem to be an unsecured obligation which, at Finding V, the master found that USA could meet.

extended first deed of trust, and its payments on the second deed of trust, as they matured. With the first deed of trust being treated as extended[4] and the unsecured obligations met or guaranteed, the only obligations which could create the necessary equity insolvency appear to be current operating expenses and the payments on the two deeds of trust. We can discover little evidence on the amounts of these impending debts or the alleged inability to pay them. While the statutory requirement of inability to meet debts as they mature is not limited to debts which have already matured, if a Chapter X petition is granted on the basis of inability to meet debts in the future, such inability must be proved to be imminent and certain, not merely a possibility or speculation. First Nat'l Bank of Cincinnati v. Flershem, 290 U.S. 504, 54 S.Ct. 298, 78 L. Ed. 465 (1934) (equity receivership reorganization); In re Hudson & Manhattan R.R. Co., 138 F.Supp. 195, 200 (S.D.N.Y.1955). *But cf.* In re Kelly-Springfield Tire Co., 10 F.Supp. 414 (D.Md.1935) (equity receivership reorganization). Over the last eight months of 1967, USA had a book net profit of some $13,000, and the special master found that on the date it filed the Chapter X petition it could meet its minor unsecured debts. USA had regularly made the previous payments on the two deeds of trust, along with its other maturing obligations, and a possible foreclosure on the second trust deed was not imminent or certain.

■ Furthermore, the master failed to delineate which debts, if any, he believed to be of such significance that they could not be currently retired from the proceeds of the debtor's regular operations. In all of the circumstances, we have therefore concluded that the petitioner did not meet the burden which should fairly rest upon it. The required allegations of a Chapter X petition, if challenged in a hearing, must be adequately established by a preponderance of the evidence, and in this case, such was not done.[5]

■ Our scope of review in a case such as this is narrow. Rule 52(a), Fed.R.Civ.P.[6] We recognize the expertise of the special master and the need for judicial restraint in reviewing his findings. *See* Olympic Finance Co. v. Thyret, 337 F.2d 62, 68 (9th Cir. 1964), *cert. denied,* 380 U.S. 963, 85 S.Ct. 1106, 14 L.Ed.2d 153 (1965); Costello v. Fazio, 256 F.2d 903 (9th Cir. 1958). But when findings fail fully to resolve a controversy, or fail to supply a clear understanding of the basis for a decision, or when the findings are significantly contradictory, they cannot support a judgment. Featherstone v. Barash, 345 F.2d 246, 250 (10th Cir. 1965); Welsh Co. of California v. Strolee of California, Inc., 290 F.2d 509 (9th Cir. 1961). Moreover, even when there is evidence to support a finding, it can be held clearly erroneous if, on review of the entire evidence, the reviewing court arrives at the firm conviction that the finding is mistaken. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■ Applying the standard of proof which we think appropriate, we hold that the master's findings on the issue

---

4. In another Finding the master considered the obligation secured by the first deed of trust as due. We think he was correct in his contrary finding that the note was extended. The findings in respect of that obligation are somewhat inconsistent, as are those relating to the obligation for attorneys' fees.

5. In the light of the drastic consequences which may result from Chapter X proceedings, the author of this opinion would require that the necessary allegations of a Chapter X petition, if seriously contested, be established by clear and convincing evidence. He has been unable, however, to persuade the majority that the imposition of such a stricter burden of proof is necessary.

6. Rule 52(a), Fed.R.Civ.P., is applicable to bankruptcy proceedings, including those under Chapter X. In re Van Sweringen Corp., 155 F.2d 1009 (6th Cir. 1946); Perry v. Baumann, 122 F.2d 409 (9th Cir. 1941).

of insolvency and inability to meet maturing debts are clearly erroneous.

### Good Faith

■■ Apart from the section 130 requirements for Chapter X relief, it must also be determined that the petition was filed in good faith. 11 U.S.C. §§ 541, 544. The allegations in the petition should contain sufficient facts to show the existence of good faith, and the burden to demonstrate both a need for Chapter X relief [7] and a good faith filing rests upon the petitioner. Marine Harbor Properties, Inc. v. Manufacturer's Trust Co., *supra*. The requirement of good faith "equips the reorganization court with a valuable and useful power to preserve the reorganization process for those cases for which it was actually intended." 6 Collier ¶ 6.07, at 1019. Independent of the insolvency problem, it is our opinion that this good faith criterion should have led the master, in the fair exercise of his discretion, to find that USA was outside the contemplation of Chapter X.[8] The finding that USA's petition was filed in good faith was also clearly erroneous.

■ Section 146 of the Act provides four non-limiting examples of when a petition is not filed in good faith. 11 U.S.C. § 546. Under the third of these four inclusive illustrations, a petition is not filed in good faith if "it is unreasonable to expect that a plan of reorganization can be effected." 11 U.S.C. § 546(3). A Chapter X petitioner is not required to propose a fair, equitable, and feasible plan of reorganization at the outset of the Chapter X proceedings, but it must show a reasonable probability or fair assurance of successful reorganization.[9] In re Hunterbrook Bldg. Corp., 276 F.2d 190, 192 (2d Cir. 1960) ; In re Sheridan View Bldg. Corp., 149 F.2d 532, 534 (7th Cir.), *cert. denied*, 326 U.S. 737, 66 S.Ct. 47, 90 L.Ed. 440 (1945). The effectiveness of a plan is left to subsequent inquiry after the trustee, if one is appointed, has had time to survey the debtor's situation. 11 U.S.C. §§ 567, 569. If no plan is feasible, the judge can either dismiss the petition or order liquidation. 11 U.S.C. § 636(2). Here, there was no showing, only a mere allegation, of the possibility of a successful reorganization.[10]

---

7. Since we decide that USA did not meet its burden of proving that it was either insolvent or unable to meet its debts as they mature, and since USA was producing substantial income at the time it filed the Chapter X petition there was no need for Chapter X proceedings. This would, of itself, compel a finding that the petition was not filed in good faith. *See* In re Piccadilly Realty Co., 78 F.2d 257 (7th Cir. 1935) ; In re Southwest Enterprises, Inc., 261 F.Supp. 721 (W.D.Ark.1966).

8. "[W]e have carefully defined the meaning of the phrase 'good faith' that is not defined in 77B. * * * I do want to indicate, however, that although we have set up standards, we have not made an inflexible meaning of the phrase 'good faith,' because we start by saying 'without limiting the generality of the meaning of the term.' So that, in case it shall appear under peculiar circumstances that good faith was not used in connection with the filing of the petition, the court may nevertheless dismiss it on that ground."

Hearings on H.R. 6439, 75th Cong., 1st Sess. 40–41 (1937), *quoted in* 6 Collier ¶ 6.01, at 997 n.17.

9. USA has called our attention to the language of a recent case from the Fifth Circuit, A–Cos Leasing Corp. v. Wheless, 422 F.2d 522, 524–25 (5th Cir. 1970), wherein the court said: "The whole scheme of Chapter X indicates that this test should not bar approval of a petition unless it is abundantly clear that there is no possibility that a plan of reorganization can be effected." Although we disagree with the strong "no possibility" standard, we notice that the next sentence is: "In other words, the Court should be 'reorganization minded' and not 'liquidation minded.' " *Id.* Our case is certainly distinguishable in that the corporation was "liquidation minded," solvent, opposed by those who are normally to be protected, the stockholders and creditors, and not adequately shown to be yet in need of reorganization.

10. The special master found that the major creditors would not assent to any plan

Generally, Chapter X is a remedial provision that attempts to rehabilitate large, generally publicly held, corporate debtors through reorganization by preserving the going concern values of the property, preventing liquidations, and protecting the rights of shareholders and creditors. Ordinary bankruptcy is not contemplated by Chapter X, except upon failure of reorganization plans.

"Congress did not intend resort to Chapter X to be had for the mere purpose of liquidation. The scheme of the chapter precludes any such conclusion."

\* \* \* \* \* \*

"Congress did not intend a Chapter X case to be turned into a liquidation proceeding at the outset, but intended the litigation to become a straight bankruptcy only after the failure to consummate a plan, and meant to limit the parties to their remedy in ordinary bankruptcy in all other cases."

Fidelity Assurance Ass'n v. Sims, 318 U.S. 608, 621–22, 63 S.Ct. 807, 87 L.Ed. 1032 (1943). The record in our case convinces us that the true purpose of this Chapter X proceeding was not rehabilitation, but resolution of an individual internal dispute between Caruso and Fallon, including the alleged corporate bleeding by Caruso, and liquidation of the property in a block with other contiguous parcels. Although Fallon stated that USA wished the Chapter X remedy because of a possible necessity to alter the capital and equity structure, he also testified that there was a supreme need for Chapter X in order to dispose of the real property at its proper value. Fallon honestly but erroneously believed that a foreclosure might be imminent, and his dominant motive for Chapter X relief was to receive as high a sales price as possible. On March 1, 1968, six months before the master made his Findings, trustee Blum, in an application for authority to borrow and lend money, proposed that USA should be treated as a single entity with three others involved in Chapter X proceedings, the Wonderbowl group, of which he was also the trustee. In November, 1968, two months before the issuance of the orders now challenged, trustee Danning, who replaced the not "disinterested" Blum, applied for and received authority to solicit bids for the sale of USA's real property. He also represented that the most beneficial reorganization might contemplate a sale, and he mentioned that Blum, as trustee for the Wonderbowl group, had advertised USA's property along with that of Wonderbowl.

Both the resolution of the internal dispute and the sale of USA's property in a package with the Wonderbowl properties certainly might have been advantageous to USA and its stockholders, but the achievement of those aims, without more, afforded an insufficient basis for the intervention of a Chapter X court. As the Supreme Court wrote in First Nat'l Bank of Cincinnati v. Flershem, *supra*, 290 U.S. at 515, 54 S.Ct. at 302, 78 L.Ed. at 473, the "court's power was invoked for a purpose for which it may not be exercised." [11] USA sought to add an unnecessary burden on the already overburdened federal courts. The parties admit that there were state court avenues for the resolution of the internal differences between Caruso and Fallon, and Chapter X proceedings should not be carelessly applied so as to strip state courts of their powers. We know, too, that Chapter X is an

---

of reorganization. Although not in itself determinative on the issue of good faith, that is a factor to be weighed. Wachovia Bank & Trust Co. v. Dameron, 406 F.2d 803, 806 (4th Cir. 1969) ; Janaf Shopping Center, Inc. v. Chase Manhattan Bank, 282 F.2d 211, 214–15 (4th Cir. 1960) ; In re Southwest Enterprises, Inc., 261 F.Supp. 721, 726 (W.D.Ark.1966).

11. Other impermissible purposes for invoking Chapter X are to delay foreclosure action in order to obtain a financing commitment and to resolve disputes between stockholders. Southern Land Title Co. v. Mitchell, 375 F.2d 874 (5th Cir. 1967) ; In re Piccadilly Realty Co., 78 F.2d 257 (7th Cir. 1935).

extremely expensive procedure, both in judicial time and in money. When a voluntary petition is opposed by substantial creditors, indenture trustees, or stockholders, the petition should be scrutinized with the utmost care, and the petition should clearly establish that it was filed in good faith and that its necessary material allegations are true. This case reflects a distressing example of waste in Chapter X proceedings. USA, a solvent corporation, was thrust into Chapter X because of a controversy between two of its principals, and its other stockholders have suffered large expenses incident to the proceedings.[12]

Upon remand, the petition will be dismissed.

Reversed.

---

12. We do not reach the two remaining issues, whether the district judge sufficiently fulfilled his role and whether the corporate resolution for the filing of the petition was valid.